CHASEZ, Judge.
The matter before us in this appeal while involving a lengthy and complicated series of events, in our opinion poses but one question for our determination. This question can be stated simply as to what degree of responsibility should we hold a gratuitous mandatary in the administration of her office.
In 1962 Joseph Weinhardt, plaintiff herein, was suffering from a series of ailments including diabetes, which kept him in poor health. His brother’s widow, Mrs. Olga Weinhardt, defendant herein who lived but a few houses from plaintiff, saw him daily and cared for him as best she could. Joseph Weinhardt was an elderly man and at that time it seemed that he did not have long to live.
On March 16, 1962 he affixed his signature to an act of procuration by which Olga Weinhardt was given the power of attorney over Joseph’s entire estate. Later Joseph Weinhardt was to deny having any knowledge of this act, either of its contents or its preparation, however he did admit that it bore his signature. We will speak of this document in greater detail below. Subsequently Joseph Weinhardt was hospitalized for what his physicians considered a terminal diabetic coma. However, he made a remarkable recovery and was able to return home.
Pursuant to the powers which she had vested in her by this power of attorney, and acting upon the advice given to her by the attorney-at-law of her own choosing, one Dean A. Andrews, Olga Weinhardt transferred all the property belonging to Joseph Weinhardt, which was considerable, to the Lojewol Corporation, a “real estate holding company” created specifically for that pur *256 pose. Included in this property were some six lots in and around the City of New Orleans, as well as the money on deposit in Joseph Weinhardt’s name in certain savings and loan and banking institutions in New Orleans. These savings accounts alone amounted to over $17,000.00.
Olga Weinhardt then, with her daughter Lois Weinhardt, as officers of Lojewol, and again on the advice of Mr. Dean A. Andrews, paid out to Mr. Andrews from Lojewol’s account the total sum of $15,-406.00 and accepted in return Andrews’ unsecured promissory note in the sum of $15,432.00. It was allegedly her intention that Mr. Andrews invest this money in a “profitable business venture”, rather than simply letting it remain in the savings institutions accruing a stable rate of interest. Then to complete this improbable misadventure, in Mr. Andrews’ words, his friend to whom the money was entrusted, “went south with the money”, and it was lost to its real owner Joseph Weinhardt.
When Joseph Weinhardt had recuperated from his long seige of illness he became aware through his accountant who tabulated his income tax for the year that something was amiss with his fortunes. He immediately secured legal counsel and took immediate action to recoup his property.
■Suit was subsequently filed by Joseph Weinhardt against Lojewol and Mrs. Wein-hardt. After some delay Mrs. Weinhardt’s attorney, the aforementioned Mr. Andrews, acting for her and the corporation, as a magnanimous gesture of his complete good faith, allowed judgment by consent to be rendered against his clients Lojewol and Mrs. Weinhardt. Mrs. Weinhardt then -sought other legal representation and was able to have the consent judgment annulled as to her. The part of the judgment against Lojewol was executed and all the real property and some cash were returned to Joseph Weinhardt. Further Mr. Andrews returned $1,000.00 himself and as a result of a foreclosure on his home a sum in excess of $3,000.00 was returned to Joseph Weinhardt.
In the meantime a trial was had on the merits as to that part of Joseph Weinhardt’s suit which attempted to seek personal recovery from Olga Weinhardt. The amount of the still unrecovered monies was $10,-652.05, and it was this sum specifically which was prayed for. Judgment was subsequently rendered in Olga Weinhardt’s favor and against Joseph Weinhardt, rejecting his claims of the personal liability of Olga Weinhardt. It is this judgment which is the subject of this appeal.
In addition there was controversy as to the introduction into the record on this appeal certain testimony given by Dean Andrews taken on Olga Weinhardt’s hearing for the annulment of the original consent judgment as to her. The trial court on rule decreed that this testimony should have been made part of the record on appeal. Joseph Weinhardt has taken a separate appeal from this decision, and it is also here before us.
As to this latter decision we are of the opinion that the trial judge was correct in holding that this testimony properly forms a part of the entire record, and should now be before us. It forms but one element of the entire proceeding as it developed in the trial below. As such it correctly forms part of the matter on appeal and should remain part of the record herein. It is noteworthy that the testimony certainly does no prejudice to plaintiff’s case, to the contrary it tends to aid his cause, yet it was plaintiff who sought to have the testimony excluded.
We are of the opinion that the judgment on the merits which relieved Olga Wein-hardt from personal responsibility, was also correct.
The trial judge quoted LSA-C.C. art. 3003 in his reasons for judgment and concluded by stating:
“We note that the responsibility with respect to faults, Art. 3003 of the Louisiana Civil Code, is enforced less rigorously *257 against the mandatary acting gratuitously than against him who receives a reward.
“Mrs. Weinhardt acted gratuitously. There will be judgment dismissing the suit insofar as Mrs. Weinhardt is concerned.”
He was correct in applying article 3003 to the facts as presented in this case. However we do not believe that that article by itself should preclude recovery. It provides:
“Art. 3003. The attorney is responsible, not only for unfaithfulness in his management, but also for his fault or neglect.
“Nevertheless, the responsibility with respect to faults, is enforced less rigorously against the mandatary acting gratuitously, than against him who receives a reward.”
Before we can make an accurate determination of all the legal principles involved herein, we feel that a close examination of the act of Procuration is in order. This document in pertinent parts provides as follows:
“BY THIS INSTRUMENT OF PRO-CURATION
“BE IT KNOWN, That on this 16th day of March in the year of our Lord one thousand nine hundred and sixty-two

Hi * * * * *
“BEFORE ME, DEAN A. ANDREWS, JR., Notary Public, in and for the Jefferson * * * PERSONALLY
CAME AND APPEARED:
“Joseph Weinhardt, * * *
“who declared that he had made and appointed, and he does by these presents make, nominate, ordain authorize, constitute and appoint, and in his place and stead, depute and put Olga M. Weinhardt, * * * to be his true and lawful Attorney in fact, general and special, giving, and by these presents granting unto the said Attorney full power and authority for him and in his name and behalf, and to his use; to conduct, manage and transact all and singular his affairs, business and concerns of whatever nature or kind, without any exception or reservation whatsoever; to open all letters of correspondence addressed to him and to answer the same; to make and endorse promissory notes in the name of Joseph Weinhardt and draw, endorse and accept hills of exchange; to make checks and draw money out of any Bank or Banks where the same may have been deposited in the name, or for account of Joseph Weinhardt to deposit drafts, bills of exchange, acceptances and promissory notes or other obligations, for collection in any Bank or Banks; and withdraw the same or the amount thereof, at pleasure, by check, or otherwise; to sell and transfer all or any shares of the capital stock of any Bank or Banks, or other corporate body or bodies owned by him and receive and receipt for the dividends due or to become due thereon; to pledge and pawn all or any shares of the capital stock of any Bank or Banks, or other corporate body or bodies, owned by the said Joseph Weinhardt and to make and give any note or notes, which may be necessary from time to time for the renewal of the same; to attend all or any meetings of creditors wherein the said Joseph Wein-hardt may be interested, and vote in his name on all questions and cases that may be submitted to such meeting, to attend all or any meetings of the stockholders of any Bank or Banks, or other corporate body or bodies, wherein the said Joseph Weinhardt may be interested, and vote in the name of Joseph Wein-hardt on all questions and cases that shall or may be submitted at such meeting, to borrow money from any Bank or Banks, or other moneyed institution or institutions on the notes or obligations of the said Joseph Weinhardt drawn by Joseph Weinhardt or by the said attorney or those of others which shall or may come into the hands of the said attorney for the use of the said Joseph Weinhardt and *258 make other notes or obligations from time to time for the renewal of all such or any part or parts thereof; to sell, transfer and convey or to mortgage and effect all or any part or parts of the real, personal or mixed estate of the said Joseph Weinhardt and to receive the price thereof, also to purchase real, personal and mixed estate in the name of said Joseph Weinhardt on such terms and conditions as the said attorney shall think fit, and to lease, let or hire all or any part of the real estate belonging to the said Joseph Weinhardt and receive and receipt for the rent and wages thereof as the same shall fall due, and for the full execution of the purposes aforesaid, to make, sign and execute in the name of the said Joseph Weinhardt all acts, whether of sale, mortgage, lease, release, contract, compromise, covenant, deed, agreement or otherwise, that shall or may be requisite or necessary, and bind the said Joseph Weinhardt thereby as firmly as if the same were or had been his own proper acts and deeds; (Emphasis supplied)
* j|C ‡ ‡ ‡ ‡
(Here is omitted a descriptive list of the six pieces of property subsequently transferred to Lojewol and identification of three savings accounts from which money was later withdrawn.)
:jc ‡ ‡ ‡ %
“And generally to do and perform all and every other act, matter and thing whatsoever, as shall or may be requisite and necessary, touching or concerning the affairs, business and concerns of the said Joseph Weinhardt as fully, amply and effectually, and to all intents and purposes with the same validity, as if all and every such act, matter or thing, were or had been particularly stated, expressed, and especially provided for, or as if the said Joseph Weinhardt could or might do if personally present; also with full power of substitution and revocation; and the said Joseph Wein-hardt does hereby agree to ratify and confirm all and whatsoever the said attorney shall lawfully do or cause to be done by virtue of this act of procuration.
“THUS DONE AND PASSED, at Metairie, La. aforesaid, the day and year aforesaid, in the presence of Eddie J. Simon and Lois L. Weinhardt Witnesses of lawful age, who hereunto sign their names as such, with the said constituent Joseph Weinhardt and me the said Notary.
(S) JOSEPH WEINHARDT
“WITNESSES:
(s) Eddie J. Simon
(s) Lois L. Weinhardt
(s) Malone Acosta
(S) Dean A. Andrews, Jr.,
Notary Public”
We can easily see that this document is an act of procuration, mandate or power of attorney as contemplated by LSA-C.C. art. 2985 et seq.
There is some serious question as to whether or not it is in authentic form. Particularly we note that Mr. Andrews is a notary for the Parish of Jefferson and while the act states that it was done before him in that parish he testified that it was made at plaintiff’s home in Orleans Parish. Further, it was admitted by Olga Wein-hardt herself that one of the two witnesses whose name appears on the instrument was not even in the plaintiff’s home when he signed the act. Finally, both Olga Wein-hardt and Andrews admitted that Joseph Weinhardt did not sign in Andrews’ presence, rather that while Andrews was in the house at the time he was not actually in Joseph Weinhardt’s room. Nonetheless for our purposes here it is not essential for this document to be in authentic form. An act under private signature is equally as effective in this situation and is governed by the same Codal articles. Further, we think that there is sufficient proof in the record that Joseph Weinhardt did affix *259 his signature to the document of his own free will, arid it was his intention to give Olga Weinhardt all the powers expressed therein.
However we must determine what effect conferring these powers upon Olga Wein-hardt had. This becomes extremely important in light of the articles which delineate the obligations of the mandatary under the various classifications of mandate.
In this regard 'LSA-C.C. art. 2995 and 2996 are relevant. LSA-C.C. art. 2995 provides :
“Art. 2995. It may vest an indefinite power to do whatever may appear conducive to the interest of the principal, or it may restrict the power given to the doing of what is specified in the procuration.”
LSA-C.C. art. 2996 states:
“Art. 2996. A mandate conceived in general terms, confers only a power of administration.
“If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express.”
A close examination of the stipulations in the act of procuration above shows that they did create in Olga Weinhardt an indefinite power to do whatever may have appeared conducive to the interests of Joseph Weinhardt. Secondly we find that it was express as to the powers of alienation and mortgage, as well as creating in her the power to withdraw monies from his savings accounts.
Thus then-with this determination in mind we turn to LSA-C.C. art. 3006 which holds:
“Art. 3006. In case of an indefinite power, the attorney can not be sued for what he has done with good intention.
“The judge must have regard to the nature of the affair, and the difficulty of communication between the principal and the attorney.”
In the final analysis we find that we are left with a decision as to whether or not Olga Weinhardt, as a duly empowered gratuitous mandatary, acting with the indefinite powers granted to her by her principals act of procuration, was acting with good intentions when she disposed of all of Joseph Weinhardt’s monies in the manner in which she did. Based upon the record we find before us we feel compelled to answer in the affirmative and for that reason are of the opinion that she should not be held personally liable for the sum which Joseph Weinhardt has not yet recovered.
We conclude as we do, not without a lengthy consideration of all the facts before us. It cannot be denied that Olga Wein-hardt’s decision in handling Joseph Wein-hardt’s estate were unwise and ill-advised. In fact if she had made no attempt whatever to administer his estate he would be in a much better financial situation than he is now. Yet these are not the tests for liability in these situations. The Code specifically provides that in the cases of a gratuitous mandatary liability can only be predicated upon a lack of “good intentions”. We can find nothing in the record to support such a finding. There is not even the slightest hint in the record that Olga Wein-hardt stood to gain personally from the manner in which she handled Joseph Wein-hardt’s estate. We can only say the record is clear that through it all she acted in complete good faith and only with the best interests of Joseph Weinhardt in mind.
For reasons hereinabove stated the judgments appealed from are affirmed.
Affirmed.