329 So.2d 781 (1976)
Henry TYSON, Plaintiff-Appellee,
v.
Johnson ROBINSON, Defendant-Appellant.
No. 12847.
Court of Appeal of Louisiana, Second Circuit.
March 15, 1976.
*782 Hamilton, Carroll & Miller by Orlando N. Hamilton, Jr., Oak Grove, for defendant-appellant.
Kidd, Katz & Strickler by Paul Henry Kidd Monroe, and George M. Strickler, Jr., New Orleans, for plaintiff-appellee.
Before BOLIN, HALL and SMITH, JJ.
HALL, Judge.
Plaintiff, Henry Tyson, owner of farmland in West Carroll Parish, sued defendant, Johnson Robinson, a cotton buyer, for $7,368.45, being the difference between the amount paid Tyson by Robinson for Tyson's ¼ share of 62,866 pounds of cotton grown by Odis Peterson on Tyson's land, based on a price of $.29 per pound stipulated in a forward sale contract between Peterson and Robinson, and the market price of the cotton when sold which was alleged to be $.75 per pound.
After trial, the district court, for oral reasons transcribed in the record, held Peterson had no authority to enter into the forward sale contract on behalf of Tyson and awarded Tyson judgment for the difference between the $.29 price and the market price of cotton on the dates it was delivered by Peterson to Robinson, which was calculated to be $5,007.55. Judgment was rendered for that amount and Robinson appealed.
On appeal, Robinson does not contend that Peterson had authority to enter into the forward sale contract on behalf of Tyson. He does contend, however, that Tyson ratified the contract by his failure to repudiate it and by accepting payment of the price stipulated in the contract.
For several years Peterson, who is Tyson's brother-in-law, leased approximately 200 acres of farmland from Tyson for the purpose of growing cotton on a "shares" basis, with Tyson entitled to receive ¼ of the cotton in kind as rental. In at least two prior years, Peterson sold all of the cotton grown on Tyson's land, including Tyson's share, to Robinson at harvest at the prevailing market price. Robinson made out checks for the purchase price to Peterson for his ¾ share and to Tyson for his ¼ share and delivered the checks to Peterson. Peterson in turn delivered Tyson's checks to him.
In 1973, for the first time, Peterson decided to enter into a forward sale contract with Robinson. Without checking with Tyson or getting his approval, Peterson signed a forward sale contract with Robinson on January 27, 1973, agreeing to sell all cotton grown by him on 140 acres of Tyson's land at a price of $.29 per pound, delivery to be made by December 15, 1973. Although the contract does not refer to Tyson, it refers to his land by serial number and it was understood between Peterson and Robinson that Peterson was "booking" Tyson's interest in the cotton as well as his own.
Tyson testified he first learned of the forward sale contract in July, 1973, when Peterson wished to enter into another such contract with Robinson covering an additional 40 acres, which Tyson objected to. Peterson entered into the second contract in July, 1973, covering 30 acres, being his ¾ interest in 40 acres. Tyson testified he went to Robinson's office at that time and told him he did not want to "book" any of his cotton and that he did not consider the January contract binding on him as he had not signed it and would not accept it. Robinson testified he did not remember the July meeting, but did remember meeting with Tyson in October at a cafe, at which *783 time he undersood Tyson to object only to the second booking contract. Robinson testified he had no knowledge Tyson was repudiating the January contract until he received a demand letter from Tyson's attorney in June, 1974.
Although Robinson did not remember Tyson coming to his office in July, 1973, he did not specifically deny the meeting took place and mentioned that many people come in and he did not remember all conversations. We conclude as a fact that the meeting and conversation took place as testified to by Tyson.
During harvest, from October through December of 1973, Peterson delivered the cotton grown on the 140 acres to Robinson. On four occasions, Robinson issued separate checks payable to Peterson and Tyson for their respective shares, based on the forward sale contract price of $.29 per pound and delivered the checks to Peterson. He in turn delivered Tyson's checks to him. Tyson's four checks totaled $4,419.30.
Tyson testified he may have told Robinson he would not cash the checks, and that he held them for awhile. He testified he then, on advice, deposited the checks in an "escrow account." Actually, the checks were credited to Tyson's account at his bank and he subsequently used this money, along with other funds, to purchase a $10,000 certificate of deposit.
The evidence establishes that Peterson was clothed with authority to sell Tyson's share of the cotton grown on Tyson's land after harvest and at the market price when delivered. Such authority did not include authority to gamble with Tyson's share by entering into a forward sale contract early in the crop year. Appellant does not contend Peterson had authority to make a forward sale of Tyson's share of the cotton and testified he could not say he believed Peterson had such authority.
Appellant contends Tyson ratified the contract by failing to repudiate it within a reasonable time and by accepting the benefits of it.
LSA-C.C. Art. 3021 provides:
"The principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him.
"For anything further he is not bound, except in so far as he has expressly ratified it."
Thus, Tyson is not bound by the act of Peterson in "booking" his cotton, unless Tyson "expressly ratified it." The burden of proving ratification is upon the party asserting it. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326 (La.App. 4th Cir. 1971); Williams v. Arkansas Louisiana Gas Company, 193 So.2d 78 (La.App. 2d Cir. 1966). The principal must have knowledge of the contract before there can be ratification. Joseph v. Greater New Guide Baptist Church, Inc., 194 So.2d 127 (La.App. 1st Cir. 1966) writ denied 250 La. 379, 195 So.2d 647 (1967). The ratification must be intentional and express. Nationwide Finance Co. of Gretna, Inc. v. Pitre, supra. One who accepts the benefits of his agent's action is held to have ratified it. Skye Realty Co. v. Diversified Insurance Agency, Inc., 221 So.2d 871 (La.App. 3rd Cir. 1969).
The evidence in this case is that Tyson repudiated the forward sale contract in his July meeting with Robinson, shortly after Tyson learned of the existence of the contract.
When Robinson thereafter accepted delivery by Peterson of Tyson's cotton after harvest in October through December, after repudiation of the forward sale contract by Tyson, Robinson became liable to Tyson for the market price thereof. Tyson did not waive his right to full payment by cashing Robinson's checks based on the lower forward sale contract price. The checks were not marked payment in full or the like. Although the *784 price to be paid may have been in dispute, at least the amount of the checks was due. In order for an accord and satisfaction to have been reached, the checks would have had to be tendered in full settement of the debt and accepted as such. Antoine v. Elder Realty Company, 255 So.2d 625 (La.App. 3d Cir. 1971). This was not the case here. Tyson did not accept the "benefits" of the forward sale contract made by his agent, but kept an amount admittedly owed him for his cotton delivered to Robinson.
We hold there was no ratification by Tyson of the forward sale contract. Robinson is liable for the market price of Tyson's cotton delivered to him, less the amount previously paid.
For the reasons assigned, the judgment of the district court is affirmed.
Affirmed.