455 So.2d 1209 (1984)
The FIRST NATIONAL BANK OF SHREVEPORT, Plaintiff-Appellant,
v.
Ruth May CRAWFORD, Defendant-Appellee.
No. 16389-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
Writ Denied November 9, 1984.
*1211 Blanchard, Walker, O'Quin & Roberts by J. Jay Caraway and L. David Cromwell, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by James Robert Jeter and Bernard S. Johnson, Shreveport, for defendant-appellee.
Before HALL, MARVIN and NORRIS, JJ.
HALL, Judge.
Plaintiff, The First National Bank of Shreveport, filed suit against the defendant, Ruth May Crawford, seeking to recover the balance of $2,053,007.68 allegedly due on a promissory note executed by Mrs. Crawford, Maxie G. Howe and Dina C. Howe in the amount of $2,250,000, and for recognition of a mortgage executed by Mrs. Crawford and the Howes affecting certain immovable property located in De-Soto Parish. Plaintiff's suit was dismissed by the district court on defendant's exception of nonjoinder of necessary parties but that decision was reversed by this court upon a holding that the Howes, although necessary parties as joint obligors on the note, were not within the jurisdiction of the court because of the exclusive jurisdiction of the bankruptcy court arising out of the Howes' Chapter 11 bankruptcy proceedings. First Nat. Bank of Shreveport v. Crawford, 426 So.2d 1348 (La.App. 2d Cir. 1983). Upon remand defendant answered denying liability and raising several defenses including the contention that the power of attorney under which Dina Crawford Howe, defendant's daughter, purported to sign the note and mortgage on defendant's behalf did not give the agent express authority to execute any promissory notes or mortgages on property owned by the defendant for the purpose of securing the Howes' indebtedness to the bank.
After trial the district court, in written reasons for judgment, found that the action of Mrs. Howe in executing the promissory note and mortgage on behalf of her mother was not for the purpose of managing and preserving her mother's estate as provided in the power of attorney and that the power of attorney did not authorize Mrs. Howe to execute the note or the mortgage on her mother's property to secure the loan made by the bank to the Howes in order to salvage the Howes' floundering dairy business. From a judgment rejecting the bank's demands the bank appealed. For reasons expressed in this opinion, we affirm the judgment of the district court.
On appeal the bank poses the issues to be considered on appeal as follows:
(1) Did the mandate granted by defendant vest in her daughter an indefinite power as contemplated by Civil Code Article 2995 to perform all acts appearing to the agent to be conducive to the best interest of the principal?
(2) Were the agent's actions in refinancing an existing loan and mortgage affecting the defendant's property and mortgaging the defendant's property to the bank to secure a long-term loan commitment from the bank, within her discretion for the managing of her mother's estate?
(3) Did defendant's inaction and silence upon learning of her daughter's actions amount to a ratification of the acts of her agent?
(4) Was defendant's estate benefited at the expense of the bank so as to allow the bank recovery from her on the basis of unjust enrichment?
*1212 Background Facts
The defendant and her husband owned a tract of land containing approximately 640 acres near Gloster in DeSoto Parish. Upon Mr. Crawford's death in 1974, Mrs. Crawford was vested with ownership of an undivided one-half interest in the property and her daughter, Mrs. Howe, was vested with ownership of an undivided one-half interest, subject to her mother's usufruct. Shortly after Mr. Crawford's death and while Mrs. Crawford was in the hospital, Mrs. Crawford executed a power of attorney naming Mrs. Howe as her agent, granting the agent full and general power to manage, administer, and control the affairs of the principal, and specifically to manage, administer, and control the affairs of the principal in the succession of Mr. Crawford. The agent was expressly authorized to borrow money for the account of the principal and to grant mortgages on real estate as security for any amount borrowed for and on behalf of the principal for the purpose of and in order to properly care for, maintain, and provide for the comforts and conveniences of the principal, or for the management and preservation of the principal's estate.
Starting in 1957, Mrs. Howe and her husband operated a dairy farm business, utilizing the Crawford property, an adjoining or nearby tract of approximately 600 acres owned by the Howes, and leased property. Mr. Crawford may have at one time been involved in the dairy farm operation but he was no longer involved in it at the time of his death, and it is perfectly clear from the evidence that Mrs. Crawford took no part in the management of the dairy business and received no benefits from it. The business was operated solely by the Howes.
Mrs. Crawford had assisted the Howes by joining with them in executing notes and mortgages to The Equitable Life Assurance Society of the United States to enable the Howes to borrow money for use in their dairy business. There was in existence in 1980 at the time the events giving rise to this lawsuit took place, a note executed by Mrs. Crawford and the Howes in solido to The Equitable in the amount of $275,000, payable in monthly installments over a long term, which note was secured by a mortgage on the Crawford property. The Howes received the proceeds of The Equitable loan and made the monthly payments on the loan.
The Howes experienced severe financial difficulties in the operation of their dairy farm business. They obtained the services of Ben Vaughan, a dairy farm expert, and largely through his efforts were able to negotiate a $1,800,000 loan commitment from The First National Bank through its vice president and agricultural loan officer, Jess Lloyd. A condition of the loan commitment was that the bank receive as collateral security a first mortgage on the Crawford property, along with other collateral security to be furnished by the Howes including a first mortgage on their property, chattel mortgages on the cattle and equipment, assignments of life insurance, and the like.
A few days prior to the loan closing on January 28, 1980, Mrs. Howe advised the attorney handling the transaction, who is not the bank's counsel in this lawsuit, that she would like to sign the loan instruments as agent for her mother under the 1974 power of attorney so her mother would not have to come to town for the closing. The attorney examined the power of attorney, approved it, and the collateral mortgage and note were prepared accordingly. As found by the trial court, the note and mortgage were executed by Mrs. Howe as agent for Mrs. Crawford without Mrs. Crawford's knowledge or consent. Mrs. Crawford testified she knew nothing about the First National Bank transaction until this suit was filed. Mrs. Howe testified she told her mother something about it at sometime, maybe a month, after the closing but her testimony as to what she told her mother was very vague and indefinite.
It is perfectly clear from the evidence that the loan was made by the bank to the Howes for the refinancing and operation of the Howes' dairy business and that the *1213 loan proceeds were disbursed for the Howes' account. The hand notes representing the indebtedness owed to the bank for which the mortgage note was pledged as collateral were signed by the Howes, and not by Mrs. Crawford or on her behalf. The act of pledge was signed by the Howes. Approximately $1,600,000 was disbursed to various creditors of the Howes and to the Howes for the purchase of cows, equipment, improvement of their dairy barn, and the like. One of the Howes' creditors paid out of the loan proceeds was The Equitable Life Assurance Society of the United States which had the existing mortgage on the Crawford property. The amount paid to The Equitable was $279,000 and The Equitable mortgage was canceled. Additional disbursements were later made to the Howes under the line of credit until the total amount owed the bank exceeded $2,000,000.
The Howes were never able to generate enough cash flow in their business to begin making the contemplated monthly payments to the bank. In the early part of 1981 the Howes filed a Chapter 11 bankruptcy proceeding. Thereafter the bank filed this suit against Mrs. Crawford. In the bankruptcy proceeding the tract of land owned by the Howes which was mortgaged to the bank was adjudicated to the bank for a credit against the indebtedness of over $900,000. Payments on the indebtedness are being made to the bank under the bankruptcy plan. The balance on the indebtedness at the time of trial was approximately $1,073,000.
The Power of Attorney
The power of attorney executed by Mrs. Crawford several years prior to the First National Bank transaction does not purport to authorize the agent, Mrs. Howe, to mortgage the principal's property as collateral security for a loan made to the agent and her husband.
Particularly pertinent to the issues involved in this case are LSA-C.C. Arts. 2995, 2996, and 2997 dealing with mandate:
"Art. 2995. It may vest an indefinite power to do whatever may appear conducive to the interest of the principal, or it may restrict the power given to the doing of what is specified in the procuration."
"Art. 2996. A mandate conceived in general terms, confers only a power of administration.
"If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express."
"Art. 2997. Thus the power must be express and special for the following purposes:
"To sell or to buy.
"To incumber or hypothecate.
"To accept or reject a succession.
"To contract a loan or acknowledge a debt.
"To draw or indorse bills of exchange or promissory notes.
"To compromise or refer a matter to arbitration.
"To make a transaction in matters of litigation; and in general where things to be done are not merely acts of administration, or such as facilitate such acts."
As to the general powers and some of the express powers granted to the agent in the power of attorney executed by Mrs. Crawford, the mandate is "indefinite", authorizing the agent "to do whatever may appear conducive to the interest of the principal." As to the express powers to borrow money and to mortgage property, the mandate is restricted "to the doing of what is specified in the procuration."
The instrument authorizes the agent "to pay all debts due and owing by the principal and to expend any moneys appearing proper in her discretion for the care, maintenance and comfort of the principal and for the purpose of managing and preserving her estate; and for such purposes said agent may borrow moneys for the account of the principal and expend the same for any such purposes." The agent is authorized to grant oil, gas, and mineral leases covering real estate owned by the principal, and "to buy, sell, exchange, rent, lease and let, and otherwise to manage, sell, dispose of or affect any such real *1214 estate, all to be upon such terms and conditions as may appear proper in the discretion of said agent." The instrument authorizes the agent to "grant mortgages on such real estate as security for any amount borrowed for and on behalf of the principal in order to properly care for, maintain and provide for the comforts and conveniences of the principal, or for the management and preservation of the principal's estate." (Emphasis supplied)
It is clear from the specific and express language of the mandate that the power of the agent to mortgage property of the principal is limited and restricted to granting mortgages as security for amounts borrowed "for the account of the principal" and "for and on behalf of the principal." In this case money was not borrowed by or for the principal. The principal did not contract a loan from the bank. The loan from the bank was to the agent and her husband, the Howes, and not to Mrs. Crawford, the principal. The collateral note and mortgage executed by the agent on behalf of Mrs. Crawford was simply security for the loan made by the bank to the Howes. That the loan was made to the Howes and not to Mrs. Crawford is evidenced by the testimony of Vaughan and Loyd as to negotiations between the bank and the Howes and that the mortgage of the Crawford property was required by the bank as collateral security, by the fact that only the Howes signed the hand notes representing the indebtedness and the pledge agreement, and by the fact that the money loaned was disbursed under the bank's supervision to pay indebtedness owed by the Howes and for operating capital in the Howes' business.
In Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92, 98 (1957) the court held:
"`Whoever deals with an agent is put on his guard by the very fact and does so at his risk. It is his right and duty to inquire into and ascertain the nature and extent of the powers of the agent and to determine whether the act or contract about to be consummated comes within the province of the agency and will or not bind the principal.
"`If the power exhibited is sufficient, the principal will not be permitted to gainsay the acts of his representative, but if it is not, he is warranted in repudiating them.' Chaffe v. Stubbs, 37 La. Ann. 656; See, Natchitoches Motor Co., Inc., v. Campbell, 17 La.App. 425, 136 So. 133.
Here, the power of attorney does not grant the agent the power to mortgage property of the principal to secure the payment of money borrowed by the agent and her husband from the bank. Such act was not within the province and power of the agent and is not binding on the principal. Since the power exhibited in the instrument was not sufficient to authorize the transaction, the principal is warranted in repudiating it.
The bank argues that the obtaining of the loan from the bank and the mortgaging of Mrs. Crawford's property by her agent was conducive to the interest of the principal and was done in management and preservation of the principal's estate. It is argued that the existing Equitable mortgage on the Crawford property could not have been repaid if the Howes' business failed, exposing Mrs. Crawford's interest in the property to foreclosure, and that the loan arrangement with the bank offered the best and most prudent prospect of preserving the property. The bank urges that at the time the loan was consummated and the mortgage granted, the actions of the agent were done in good faith pursuant to the agent's broad and unlimited discretion to borrow money and mortgage property for the management and preservation of the principal's estate. Citing Weinhardt v. Weinhardt, 214 So.2d 254 (La.App. 4th Cir. 1968), writ refused, 253 La. 57, 216 So.2d 305 (1968), the bank argues that an agent with indefinite authority who acts with good intentions in exercising such discretionary authority is not liable to the principal even though the discretionary acts may later prove to be unwise or ill advised; a fortiori, a third party dealing with the *1215 agent is protected from the principal's avoidance of obligations incurred by the agent in the exercise of the agent's discretion.
The first answer to these arguments is that regardless of whether the agent's actions could be viewed as being for the purpose of managing and preserving the principal's estate, the power of attorney does not authorize the action taken as previously discussed.
Secondly, the facts of the transaction, as known to the bank, in no way support a conclusion from the viewpoint of the bank that the granting of a $2,250,000 mortgage to the bank on the Crawford property to secure a loan to the agent, with only a portion of the loan proceeds used to pay the $275,000 Equitable mortgage, was an act in preservation or management of Mrs. Crawford's estate. There was no proof that the Equitable mortgage was past due or in imminent danger of foreclosure or could not otherwise be satisfied. Payment of the Equitable mortgage was obviously done to discharge one of the Howes' debts, which were being consolidated, and to provide the bank with a first mortgage on the Crawford property. The Equitable mortgage was paid for the benefit of the borrower and the lender and not to manage or preserve the estate of Mrs. Crawford.
The bank also urges that the power of attorney grants to the agent indefinite discretionary authority to "affect" the property of the principal. Whether the term "affect" might ordinarily include "mortgage" or "incumber" need not be determined; whatever authority is granted in this instrument to "affect" property must give way to the more specific, express, but limited authority to mortgage property as specifically set forth in the instrument.
Since the power of attorney did not authorize the agent to execute a collateral mortgage and note to secure a debt incurred by the agent and since the mortgage of the principal's property was not done for the management or preservation of the principal's estate, the agent's act is not binding on the principal. Insofar as the mortgage purports to affect Mrs. Crawford's interest in the property mortgaged, it is voidable and of no effect.
Ratification
The bank argues that Mrs. Crawford, by her silence and inaction after being informed of the bank transaction, ratified the action of her agent in executing the note and mortgage, and is bound thereby regardless of the agent's original authority.
The concept of ratification by a principal of an agent's unauthorized acts is recognized in two articles of the Civil Code:
LSA-C.C. Art. 3010:
"The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity."
LSA-C.C. Art. 3021:
"The principal is bound to execute the engagements contracted by the attorney, conformably to the power confided to him.
"For anything further he is not bound, except in so far as he has expressly ratified it."
The applicable principles are well expressed in Bamber Contractors v. Morrison Engineering, 385 So.2d 327 (La.App. 1st Cir.1980):
"Ratification, in the law of agency, is the adoption by one person of an act done on his behalf by another without authority. Ratification amounts to a substitute for prior authority. Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir.1970), writ refused 256 La. 372, 236 So.2d 501 (1970). The burden of proving ratification is on the party asserting it, Tyson v. Robinson, 329 So.2d 781 (La.App. 2nd Cir. 1976), and to find ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the *1216 act, and no intent will be inferred when the alleged ratification can be explained otherwise. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326 (La. App. 4th Cir.1971). Ratification will occur when the principal, knowing of the contract, does not repudiate it but accepts its benefits. Gallioto v. Trapani, 238 La. 625, 116 So.2d 273 (1959); Ledoux, supra."
The bank did not prove by a preponderance of the evidence that Mrs. Crawford knew and understood what her agent had done in this case. Mrs. Crawford denied knowing anything about the transaction until this suit was filed. Mrs. Howe's testimony was vague and indefinite as to what she told her mother about the transaction and when she told her. A clear intent to ratify the collateral note and mortgage cannot be inferred from the facts of this case. Ratification was not established.
Unjust Enrichment
The bank urges in the alternative that it should be allowed recovery from the defendant because her estate would otherwise be unjustly enriched at the expense of the bank. It is argued that Mrs. Crawford was enriched by reason of the $275,000 Equitable mortgage being paid and the expenditure of $100,000 for improvements to the dairy barn located on the Crawford property, and that the bank was impoverished to that extent without compensation from Mrs. Crawford.
An action for unjust enrichment or actio de in rem verso is founded upon the equitable principle embodied in LSA-C.C. Arts. 21 and 1965 that no one should be enriched at the expense of another. To successfully invoke the action there must be: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) no other remedy at law. Edmonston v. A-Second Mortgage Co. of Slidell, Inc., 289 So.2d 116 (La.1974); Minyard v. Curtis Products, Inc., 251 La. 624, 205 So.2d 422 (1967).
If it can be said that Mrs. Crawford was enriched by payment of the Equitable loan for which she was obligated in solido with the Howes, the bank was impoverished by reason of its funds being used to pay the Equitable loan without corresponding consideration, and that there is a connection between the enrichment and the impoverishment, the action must nevertheless fail because there was justification or cause for the enrichment and impoverishment.
The enrichment is justified if it is the result of, or finds its explanation in, the terms of a valid juridical act between the impoverishee and the enrichee or between a third party and the enrichee. Edmonston v. A-Second Mortgage Co. of Slidell, Inc., supra. Legal cause or justification exists where there is a lawful contract or provision of law intended to permit the enrichment or to prevent the impoverishment or to bar attack on the enrichment or the impoverishment. See Tate, The Louisiana Action for Unjustified Enrichment, 50 Tul.L.Rev. 883 (1976) and 51 Tul.L.Rev. 447. An enrichment has legal justification when it flows from the proper application of a rule of law or contractual provision. G. Woodward Jackson Co., Inc. v. Crispens, 414 So.2d 855 (La.App. 4th Cir.1982).
Here, the payment of the Equitable loan by the Howes with part of the proceeds of their loan from the bank and the resulting benefit to or enrichment of Mrs. Crawford was justified by reason of the Howes' obligations under the Equitable note and mortgage for which they were obligated in solido with Mrs. Crawford, and the provisions of LSA-C.C. Art. 2106. Article 2106 provides:
"If the affair for which the debt has been contracted in solido, concern only one of the co-obligors in solido, that one is liable for the whole debt towards the other codebtors, who, with regard to him, are considered only as his securities."
The proceeds of the Equitable loan were received by the Howes. The Equitable *1217 debt contracted in solido with Mrs. Crawford concerned only the Howes and they were liable for the whole debt to Mrs. Crawford who, as between the codebtors, was considered only as the Howes' surety.
Under the juridical act or contract (the Equitable note and mortgage) between the enrichee (Mrs. Crawford) and the third party (the Howes) and the provisions of law applicable thereto (LSA-C.C. Art. 2106), the third party was liable to the enrichee for the payment of the debt. There was legal cause or justification for the satisfaction of the Howes' obligation to Mrs. Crawford and to Equitable out of the proceeds of the loan to the Howes from the bank, just as there was legal cause or justification for payment of other obligations owed by the Howes. The bank is no more entitled to recover from Mrs. Crawford than it is from Equitable or any other creditor or obligee of the Howes who received payment from the Howes out of the loan proceeds.
The evidence does not support the bank's contention that $100,000 of the loan proceeds was used to make improvements to the dairy barn located on the Crawford property. There was testimony that some improvements to the barn were made, but the extent and value thereof, or the benefit to Mrs. Crawford, was not established. The testimony is not clear, but the $100,000 figure mentioned seems to refer to dairy equipment which may have been located in the barn. The bank failed to prove that defendant was enriched in this respect.
Conclusion and Decree
Because of the conclusions reached in this opinion on the issues considered which result in affirmance of the judgment rejecting the plaintiff's demands, it is unnecessary to consider the other defenses raised by defendant.
For the reasons assigned, the judgment of the district court is affirmed at the cost of plaintiff-appellant.
Affirmed.