385 So.2d 327 (1980)
BAMBER CONTRACTORS, INC.
v.
MORRISON ENGINEERING & CONTRACTING COMPANY, INC.
No. 13222.
Court of Appeal of Louisiana, First Circuit.
March 31, 1980.
Rehearing Denied June 20, 1980.
*328 Charles W. Lamar, III, Breazeale, Sachse & Wilson, Baton Rouge, for plaintiff-appellant.
Bert K. Robinson, and Eric A. Kracht, Wray, Robinson & Mary, Baton Rouge, for defendant-appellee.
Before EDWARDS, LEAR and WATKINS, JJ.
EDWARDS, Judge.
Bamber Contractors, Inc., plaintiff-appellant, seeks reversal of a trial court judgment rejecting Bamber's demands against Morrison Engineering & Contracting Company, Inc., defendant-appellee herein. We affirm.

I. FACTS
Bamber Contractors, a company involved in highway and levee construction work, was, in August of 1971, the owner of several *329 Euclid bottom dumps, a type of earth moving equipment.
On August 26, 1971, one Morris Kibodeaux, needing two Euclids, leased them from Bamber at a rate of $1,500.00 per month per Euclid. Kibodeaux signed the separate leases:
 "By Kibodeaux & Spell
 For Morrison Eng. & Contr. Co.
 For Allen Parish Dam Job
 ByMorris Kibodeaux"
Subsequent to Kibodeaux's taking possession of the Euclids, Bamber mailed invoices directly to the Morrison Engineering & Contracting Co., Inc. In each case, for the three-month period from August 26, 1971, through November 25, 1971, payment in full was tendered either by Morrison Engineering or by Pointe Coupee Constructors, Inc., a distinct corporation entirely owned by parties who also were shareholders of Morrison Engineering. The final payment of rent was made on November 8, 1971.
On November 23, 1971, John L. Morrison, Jr., an officer in both Morrison Engineering and Pointe Coupee, sent the following letter to Bamber:
 "Mr. James Bamber
 Bamber Contractors, Inc.
 P. O. Box 128
 Denham Springs, La.
 Re: Equipment Rent
 Dear Mr. Bamber:
The next month's rent on your two belly dumps is due for one month in advance on November 25, 1971. Please consider this a notice that Pointe Coupee Constructors, Inc. or Morrison Eng. & Contr. Co., Inc. is no longer renting these peices (sic) of equipment from you.
You may pick up your equipment any time after the date of renewal. Thank you very much for your co-operation.
 Very truly yours,
 Morrison Eng. & Contr. Co., Inc.
 by /s/ John L. Morrison Jr. 
 John L. Morrison Jr."
An unidentified party or parties returned the Euclids to Bamber's equipment yard over the Thanksgiving weekend of November 25-29. On returning to work, James E. Bamber, Sr., President of Bamber Contractors, inspected the Euclids and wrote a report detailing the extensive damage which had occurred during the period the Euclids were leased.
Correspondence between Bamber Contractors and Morrison Engineering failed to resolve Bamber's claim that Morrison was responsible for damage to the Euclids. The present litigation ensued.
At trial, Bamber sought to prove that:
1. Morrison Engineering was lessee of the Euclids.
2. Morrison had made Kibodeaux its agent and, as principal, was liable for the damaged Euclids.
3. Morrison ratified Kibodeaux's act of leasing the Euclids.
4. Morrison was estopped to deny that it was lessee of the Euclids.
Following trial, judgment was rendered in favor of Morrison Engineering on the basis that Bamber failed to carry its burden of proof. Bamber appeals on the same grounds found insufficient by the trial court.

II. MORRISON AS LESSEE
It is difficult to imagine how much the facts of this case would have to be distorted for us to find that Morrison Engineering itself leased the Euclids from Bamber. No officer, director, shareholder or employee of Morrison ever even approached Bamber regarding the equipment, much less signed a lease for it. Nor was such an allegation made. To the contrary, the leases were signed by Morris Kibodeaux on behalf of Kibodeaux & Spell, a separate and distinct company. Morrison Engineering clearly was not the lessee of Bamber.

III. KIBODEAUX AS AGENT
Bamber urges that Morrison clothed Kibodeaux with apparent authority to lease the Euclids and that, as principal, Morrison is liable for the damage.
*330 Apparent authority is a jurisprudential creation and, in contrast to the express authority of LSA-C.C. Art. 2997 or the implied but actual authority of LSA-C.C. Art. 3000, amounts to no authority at all. Apparent authority is a concept of estoppel operating in favor of a third party seeking to bind a principal for the unauthorized act of an agent. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (1973).
Two requirements must be met for the doctrine of apparent authority to apply. First, the principal must make some form of manifestation to an innocent third party. Second, the third party must rely reasonably on the purported authority of the agent as a result of the manifestation. Lilliedahl & Mitchel, Inc., v. Avoyelles Trust & Savings Bank, 352 So.2d 781 (La.App. 3rd Cir. 1977).
If these requirements have been met, the principal will be bound by the agent's acts, which, although beyond his actual authority, were within his apparent authority. Pailet v. Guillory, 315 So.2d 893 (La.App. 3rd Cir. 1975). The burden of proving apparent authority is on the party relying on the mandate. Vermilion Bank & Trust Company v. Miller, 284 So.2d 662 (La.App. 3rd Cir. 1973); Builders Center, Inc. v. Smith, 228 So.2d 245 (La.App. 1st Cir. 1969).
A third party seeking benefits from the apparent authority doctrine may not have blindly relied on the assertions of an agent. One dealing with an agent, by the mere fact of agency, is given the right and duty to determine, at his peril, whether the agency purportedly granted by the principal will permit the proposed act by the agent. Carey Hodges Associates, Inc. v. Continental Fidelity Corporation, 264 So.2d 734 (La.App. 1st Cir. 1972); Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (1957); Herbert v. Langhoff, 185 La. 105, 168 So. 508 (1936).
In this case, the facts do not support a finding of apparent authority.
Mrs. James E. Bamber, Sr., testified that John L. Morrison, Sr., President of both Morrison Engineering and Pointe Coupee Constructors, had phoned her and stated that his company wanted to rent Euclids and would guarantee the rent. Mr. Morrison flatly contradicted her testimony. The trial court evidently believed Mr. Morrison and, despite appellant's characterization of Mr. Morrison's testimony as "vague and evasive" in contrast to Mrs. Bamber's "open and candid" story, such an evaluation is fully supported by the record. Arceneaux v. Domingue, 365 So.2d 1330 (1978).
While Morrison Engineering or Pointe Coupee Constructors paid $9,000.00 directly to Bamber in rentals for the Euclids, such payment was made solely on behalf of Kibodeaux and not because Morrison Engineering owed anything.
On February 9, 1971, Morrison Engineering entered into a contract with the State to perform work on a dam and spillway near Kinder. After a small portion of the work had been performed, labor troubles surfaced and, to avoid further problems, Morrison assigned the contract to Pointe Coupee Constructors. That was on July 28, 1971. On August 6, 1971, Pointe Coupee assigned the contract to Morris Kibodeaux. As assignee, Kibodeaux agreed to "furnish all labor, materials and equipment(.)" Because Kibodeaux's reputation was thought somewhat undesirable, and to avoid possible liens, Pointe Coupee Constructors paid all Kibodeaux's bills as they came due and subtracted the payments from the amount due Kibodeaux under the assignment to him. Thus, the $9,000.00 paid to Bamber was paid on behalf of Kibodeaux and not because Morrison Engineering owed anything.
The most favorable evidence to Bamber's claim is the November 23, 1971, letter from John L. Morrison, Jr., supra. Despite language in the letter which seems to indicate that rental of the Euclids was by Morrison or Pointe Coupee, the testimony at trial explaining Pointe Coupee's practice of paying Kibodeaux's bills clearly demonstrates that the letter was only notice to Bamber that neither Morrison Engineering nor *331 Pointe Coupee Constructors would stand behind Kibodeaux after November 25. Furthermore, since the letter was written three months after the original leasing, any probative value that it might have would go toward Bamber's claim that Morrison Engineering ratified Kibodeaux's acts. In no way could a letter written three months after the act clothe Kibodeaux with apparent authority at a previous time.
Finally, we note that Bamber made no effort to ascertain whether Kibodeaux had any authority to bind Morrison. In fact, James Bamber's own testimony was that he knew of Kibodeaux as a subcontractor.
The trial court correctly denied plaintiff's claim that Kibodeaux had apparent authority to act for Morrison Engineering.

IV. RATIFICATION
Morrison Engineering never ratified the acts of Kibodeaux.
Unless a principal expressly ratifies the acts of an agent who has exceeded his authority, the agent alone is bound. LSA-C.C. Arts. 3010, 3013, 3021.
Ratification, in the law of agency, is the adoption by one person of an act done on his behalf by another without authority. Ratification amounts to a substitute for prior authority. Ledoux v. Old Republic Life Insurance Company, 233 So.2d 731 (La.App. 3rd Cir. 1970), writ refused 256 La. 372, 236 So.2d 501 (1970). The burden of proving ratification is on the party asserting it, Tyson v. Robinson, 329 So.2d 781 (La.App. 2nd Cir. 1976), and to find ratification of an unauthorized act, the facts must indicate a clear and absolute intent to ratify the act, and no intent will be inferred when the alleged ratification can be explained otherwise. Nationwide Finance Co. of Gretna, Inc. v. Pitre, 243 So.2d 326 (La.App. 4th Cir. 1971). Ratification will occur when the principal, knowing of the contract, does not repudiate it but accepts its benefits. Gallioto v. Trapani, 238 La. 625, 116 So.2d 273 (1959); Ledoux, supra.
It is obvious that Kibodeaux, as subcontractor, and not Morrison Engineering received the use and benefit of the Euclids. Further, the invoices mailed by Bamber and subsequently paid by Pointe Coupee recited that Kibodeaux and Spell was "your sub contractor(.)" Clearly, Morrison had no reason to repudiate anything since the invoice was sent and paid pursuant to the billing and payment practice previously described.
The November 23, 1971, letter, correspondence between James Bamber and John L. Morrison, Jr., covering the period from January 11-24, 1972, and the testimony of John L. Morrison, Jr. (T 236-7), are plaintiff's only reasonable bases for claiming ratification. Morrison's letter of January 18, 1972, was evasive at best and his explanation at trial was openly hostile despite claims that he only wrote the letter in an attempt "to help Mr. Jimmy (Bamber)." Nevertheless, neither Morrison's letter nor his testimony even begins to satisfy the requirement that ratification be clearly intended. Nationwide Finance Co. of Gretna, Inc. v. Pitre, supra. The letter of November 23 has already been shown to be nothing more than a notice to Bamber that neither Morrison Engineering nor Pointe Coupee Constructors would continue to stand behind Kibodeaux.

V. EQUITABLE ESTOPPEL
Equitable estoppel arises when one by his actions, or by his silence when he ought to speak, induces another to believe certain facts and the other relies on these facts to his prejudice. The estoppel is designed to foster justice by preventing the first party from taking a position contrary to his prior conduct. City of Bossier City v. Usery, 356 So.2d 1099 (La.App. 2nd Cir. 1978).
Morrison Engineering did no act which led Bamber to lease the Euclids to Kibodeaux. Nor did Morrison by silence induce Bamber to believe Kibodeaux was its agent. As stated, James Bamber viewed Kibodeaux as a subcontractor. Finally, the November 23, 1971, letter from Morrison to *332 Bamber made clear that there would be no future backing for Kibodeaux. The letter was written after the period in which the Euclids were damaged and cannot possibly be construed as leading Bamber into a detrimental reliance. There is no basis for equitable estoppel.
Bamber's claim that Morrison waited until trial in 1979 to deny being lessee is not well taken. We find that the evidence, taken as a whole, clearly amounts to a denial, despite Morrison's letter of November 23, 1971. Furthermore, because Bamber waited five years to file suit, there was no reason for Morrison to make any formal denial.
Morrison never entered the lease as principal. Kibodeaux had no apparent authority when he entered the lease. Morrison never demonstrated a clear intent to ratify Kibodeaux's unauthorized acts. Morrison never led Bamber into a detrimental reliance.
Plaintiff-appellant, Bamber Contractors, has simply failed to carry its burden of proof. Therefore, the trial court judgment is affirmed. All costs of these proceedings, both trial and appellate, are to be paid by Bamber Contractors, Inc.
AFFIRMED.