503 So.2d 1 (1987)
Sherif Y. BOULOS, et al.
v.
Lou MORRISON d/b/a Casa Alejandro.
No. 86-C-1817.
Supreme Court of Louisiana.
February 23, 1987.
Rehearing Denied April 2, 1987.
A.D. Freeman, Satterlee, Mestayer & Freeman, for applicant.
Edward Nicholas George, III, John A. Stassi, Michael Laughlin, Stassi & Rausch, for respondent.
*2 WATSON, Justice.
Sherif Y. Boulos and Paul J. Durso seek the sum of $8,250 from Morris Lew[1] d/b/a Casa Alejandro, alleging the cash was given to Lew's agent, Miguel "Mike" Felberg or Feldberg, for merchandise which was never delivered. The trial judge dismissed the suit, and the court of appeal affirmed.[2] A writ was granted to review that judgment.[3]

ISSUE
The issue is whether plaintiffs carried their burden of proving that Mike had apparent authority, on which they reasonably relied, to act on the store's behalf.

FACTS
Plaintiffs, partners in a wholesale jewelry and gift business, were in New Orleans to sell wholesale jewelry. They were staying at the Marriott Hotel. Morris Lew owned a business on Canal Street across from the Marriott called Casa Alejandro which specialized in the sale of electronic equipment to foreign seamen and tourists. Lew's brother-in-law, Sander L. Pactor, was the store manager. On the date of the alleged transaction, September 4, 1982, the Saturday of Labor Day weekend, Lew was out of town.
According to manager Pactor, plaintiffs entered the store and Boulos expressed an interest in the purchase of a personal stereo. After they agreed upon a discounted price, Boulos paid $130 cash for a Toshiba cassette player and Pactor wrote out a sales slip. While Boulos was making this purchase, Durso was speaking with Mike at the front of the store.
Boulos testified[4] that Mike met him at the door; negotiated the price of the stereo; and Pactor closed the transaction. According to Boulos, he did not receive a separate receipt or any receipt for his cash purchase from Pactor. Boulos said he believed Mike to be the store's owner.
After the stereo transaction, Boulos and Pactor joined Mike and Durso in the front of the store and began discussing the purchase of other video equipment. Pactor said most of what plaintiffs wanted was not on hand in the store. After plaintiffs left the store, Pactor did not see them inside again until after the Labor Day weekend was over.
According to plaintiffs, Mike subsequently took Boulos into a back office, and plaintiffs agreed to purchase two cameras, three videos, and twenty gold Dupont lighters. Pactor admitted a later discussion of unknown content took place between plaintiffs and Mike but said it was outside the store window.
Plaintiffs said they left the store to obtain funds for the purchase. When they returned, they gave Mike $8,250 in cash, and Mike agreed to deliver the merchandise to the Marriott later that evening because some of it was not immediately available. Pactor said the store would have had, at most, ten of the Dupont lighters in stock.
Mike gave plaintiffs a Casa Alejandro receipt for $8,250 signed "M". In evidence is the undated receipt; it shows no sales tax and no indication that the itemized merchandise[5] was to be delivered. Mike also gave Boulos two business cards of Casa Alejandro imprinted with "Mike a Sus Ordenes" ("Mike at your service"). Mike never delivered the merchandise and no one has seen or heard from him since the date of the alleged transaction.[6]
Lew stated that he first met Mike earlier that week and characterized him as a fellow that hung around the store. According *3 to Lew and Mike's "understanding", Mike was paid a five to ten percent commission on sales to customers he brought in the store. Lew had similar arrangements with other people and shipping companies. Lew and Pactor denied that Mike was an "employee"; the only employees were Pactor, a Mr. Sanchez, and a Mr. Gasee.
Both Lew and Pactor denied ever seeing business cards with Mike's name printed on them or giving Mike permission to print the cards. They also testified that the arrangement with Mike did not allow him to make sales, use the cash register, or even go behind the sales counter. Pactor emphatically denied that Boulos or Mike ever entered the back office of the store.

LAW
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C.C. art. 2985. An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. See Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931). As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.,1973); Interstate Electric Co., supra. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Broadway, supra; Interstate Electric Co., supra.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. Comfort Heating & Air Conditioning, Inc. v. Brock, 476 So.2d 927 (La.App. 2 Cir., 1985); Byles Welding & Tractor, Inc. v. McDaniel, 441 So.2d 48 (La.App. 3 Cir., 1983); Bamber Contractors, Inc. v. Morrison Engineering & Contracting Company, Inc., 385 So.2d 327 (La.App. 1 Cir., 1980). The burden of proving apparent authority is on the party relying on the mandate. Bamber Contractors, supra.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power. Buckley v. Woodlawn Development Corp., 233 La. 662, 98 So.2d 92 (1957); Byles Welding, supra; Bamber Contractors, supra.
The standard of appellate review of a trial court's findings of fact is set forth in Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978) and Canter v. Koehring Co., 283 So.2d 716 (La., 1973). Where there is credible evidence before the trier of fact, which furnishes a reasonable factual basis for the trial court's conclusion, an appellate court should not reverse unless the trial court is clearly wrong. Factual conclusions of the trial court are entitled to great weight since the trial court is in a better position to evaluate the credibility of witnesses, and an appellate court should not disturb those conclusions unless clearly and manifestly erroneous. Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955); Guin v. Commercial Casualty Ins. Co., 224 La. 44, 68 So.2d 752 (1953).

CONCLUSION
The trial court found that plaintiffs failed to carry their burden of proving apparent authority, evidently being more impressed with the testimony and credibility of Lew and Pactor than plaintiffs. The trial court's factual findings are not clearly wrong.
*4 First, plaintiffs have failed to prove that the actions of Casa Alejandro's owner and manager manifested an intent to make Mike an agent. Lew testified that Mike was not an "employee", and both Pactor and Lew insisted that Mike was not allowed to go behind the sales counter, operate the cash register, or write up a sales slip. Boulos never saw Mike operate the cash register, wait on any other customers, or write up a sales slip, except the one in evidence. Lew's arrangement with Mike was simply that Mike would obtain a commission for each sale made to a customer he brought into the store. Both Lew and Pactor denied having seen the business cards of Casa Alejandro on which Mike's name was printed or having authorized their printing. Even if Mike attempted to pass himself off as a store employee, plaintiffs failed to prove that Lew or Pactor manifested apparent authority for Mike to act as the store's agent.
The crucial factor is plaintiffs failure to prove that they reasonably relied upon Mike's purported authority. Plaintiffs are jewelry merchants, apparently sophisticated business persons, who come to New Orleans to sell jewelry on a regular basis. They contend that they handed over $8,250 in cash for merchandise unavailable in the store, relying solely upon Mike's statement that he would obtain the merchandise and an undated receipt signed "M". Although the alleged transaction occurred late on the Saturday of a Labor Day weekend, plaintiffs expected Mike to obtain and deliver the goods to their hotel that evening. The facts and circumstances should have caused plaintiffs Boulos and Durso to question Mike's authority and good faith. See Buckley, supra.
The trial judge, after hearing and viewing the witnesses and studying one plaintiff's deposition, was not convinced that plaintiffs reasonably relied upon Mike's purported authority. The trial judge's weighing of evidence in cases largely factual is entitled to great respect. There is certainly no clear error. The judgment is affirmed.
AFFIRMED.
DIXON, C.J., respectfully dissents.
DENNIS, J., dissents for the reasons assigned by LEMMON, J.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
Defendant and his store manager permitted the alleged agent to "hang around" the store and discuss merchandise with customers other than those the alleged agent brought into the store under his commission arrangement. They also permitted the alleged agent to have sufficient access to to the sales area to obtain sales receipts, one of which was given to plaintiffs. After one of the plaintiffs made a purchase from the manager while the other plaintiff talked with the alleged agent inside the store, the manager joined the alleged agent in discussions of merchandise with the two plaintiffs.
Defendant and his store manager thus created circumstances under which plaintiffs, having purchased some merchandise from the manager and discussed other merchandise with the manager and the alleged agent together, could have reasonably believed that the alleged agent, with a printed business card, had the authority to receive funds for the purchase price of the other merchandise and to promise delivery of the merchandise. The judicial doctrine of apparent authority binds the principal for these acts of the agent whom the principal clothed with apparent authority.

ON APPLICATION FOR REHEARING
PER CURIAM
Application for rehearing is denied.
Contrary to what relator argues in the application for rehearing, the majority opinion does not misstate the record when it says that both Lew and Pactor denied ever seeing business cards with Mike's name printed on them, or giving Mike permission to print the cards. The testimony of the defendant Lou Morrison at page 48 of the transcript, while not especially helpful to his cause, is not to the contrary.
NOTES
[1] Incorrectly named Lou Morrison in the original petition.
[2] 492 So.2d 61 (La.App. 4 Cir., 1986).
[3] 496 So.2d 338 (La., 1986).
[4] Co-plaintiff Durso was not subpoenaed to testify at trial but his deposition was offered by counsel for plaintiffs and allowed in evidence over the objection of defendant.
[5] cameras: 3100
 3 videos: 3000
 20 Dupont lighters: 2000
 1 Toshiba cassette: 150
 _______
 $8,250"

[6] According to Pactor, Mike departed with a camera Pactor had loaned him. Another man alleged that he had given Mike some foreign currency to be exchanged and had never received any money in return.