539 So.2d 860 (1989)
MARY ADAMS & ASSOCIATES
v.
Ralph ROSENBLAT, Henry Rosenblat and Joel Loeffeholtz d/b/a JHR Venture and Lakeview Acceptance Corporation.
No. 87-CA-883.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1989.
William H. Edwards, Metairie, for defendant-appellant Lakeview Acceptance Corp.
William J. Dutel, New Orleans, for defendant-appellee Ralph Rosenblat, et al.
Jonathan M. Lake, New Orleans, for plaintiff-appellee Mary Adams & Associates.
Before CHEHARDY, BOWES and GAUDIN, JJ.
GAUDIN, Judge.
This slightly unusual proceeding, which combines a real estate agent's claim for a commission with a concursus, was filed in the 24th Judicial District Court by Mary Adams & Associates. A proposed sale of real property located at 3620 Airline Highway in Metairie, Louisiana had failed to materialize, leaving Adams, the agent, holding the down payment of $19,350.00 tendered by the would-be purchaser, Lakeview Acceptance Corporation. Lakeview's deposit was placed in the registry of the court by Adams.
In the petition, Adams alleged that Lakeview had defaulted on its agreement to buy *861 the property and that it owed Adams' commission and attorney fees.
Lakeview was also named a defendant in the concursus, along with the property owners, Ralph and Henry Rosenblat and Joel Loeffeholtz, doing business as JHR Venture.
Following a bench trial, the district judge ordered (1) that $6,577.00 plus $3,000.00 attorney fees be paid by Lakeview to Adams; (2) that the property-owners, JHR Venture, be paid $19,508.50 plus $3,000.00 attorney fees; and (3) that the claims of Lakeview be dismissed. Lakeview had asked that its deposit be returned because the sales agreement had expired and should be judicially declared null and void. The judgment does not specify who is to pay JHR the $22,508.00 but it seems clear that the trial judge intended JHR receive the funds in the registry of the court.
With slight modification, we affirm the judgment in Adams' favor, thus affirming the district court finding (1) that Adams is due its fee as per the contract, (2) that the original contract was legally kept in full force by an extension agreement dated August 16, 1985 and (3) that Lakeview and not JHR caused the sale not to go through.
On appeal, Lakeview argues that the trial judge erred in finding that the agreement to purchase had not expired. Also, Lakeview contends that the amounts awarded, approximately $32,000.00, exceed the amount placed in the court's registry.
Adams' judgment against Lakeview is in line with the facts and circumstances of this case and in direct accord with Adams' original petition and prayer. As the amount placed in the registry of the court has been adjudicated to JHR and no longer belongs to Lakeview, Adams must look elsewhere for enforcement of its money judgment against Lakeview.

BACKGROUND
The original agreement to buy and sell is dated August 16, 1985 and was executed by Ralph Rosenblat and by "Richard G. Moe, President, Lakeview Acceptance Corporation." According to the testimony, Lakeview was a two-man corporation owned by Mr. Moe and his partner, Wayne Fontenelle.
The contract called for the sale of 3620 Airline Highway by October 15, 1985. The sale, for $193,500.00, was conditioned on Lakeview's ability to borrow, within 45 days, the sum of $154,800.00 at 13 per cent interest for 30 years. A commitment by a lender to make the loan would satisfy this condition, and Lakeview agreed to make a good faith application for the loan within 10 days.
Lakeview initially made a loan application to Security Homestead Association, which declined to make the loan. Lakeview then entered into discussions with the First Financial Bank. At a meeting on October 2, 1985, attended by Mr. Moe, Ms. Adams and the bank's loan officer, Lakeview was advised that it had to provide additional financial information. Because more time would be needed to process the application, Mr. Moe executed an amendment of the sales agreement, extending the time for obtaining the loan and the time for passing the act of sale. The sellers agreed to the extension.
Mr. Moe testified that at the time he agreed to the extension, he had decided to purchase the property personally and that he advised Ms. Adams and the bank officer of this change. Ms. Adams denied that Mr. Moe at that time made such a declaration. Regardless, it would have taken more than Mr. Moe's unilateral approval to switch the corporate obligation to purchase real property to a personal agreement. Other parties were involved in this proposed transaction.
The October 2, 1985 document is entitled "Amendment to Agreement to Purchase" and it extended the time for obtaining the necessary loan from 45 to 75 days. The act of sale, according to the amendment, would be passed on or before November 15, 1985, an extension of 30 days. On October 15, 1985, the First Financial Bank rejected the loan application. The sellers then agreed to make the loan themselves and Lakeview was notified by certified mail. Also by *862 certified mail, Lakeview was contacted by the closing attorney who wrote:
"This is to advise you that the sale of the above referenced property (3620 Airline Highway) is set for November 15, 1985 at 2:00 p.m. in my office at 2201 Veterans Boulevard, Suite 411, Hibernia Bank Building in Metairie. The owners of the above referenced property will be present at that time, ready, willing and able to tender title of the above referenced property to you."
The parties appeared at the designated time but Lakeview refused to take title. Adams subsequently filed the instant suit.

THE AGENT'S CLAIM
In the petition, Mary Adams & Associates said in paragraph 7:
"Defendants have failed and refused to reach an agreement with regard to the disposition of the deposit held by Mary Adams & Associates. Sellers seek forfeiture of the deposit by the purchaser and purchaser seeks return of the deposit."
Accordingly, the $19,350.00 deposit was put in the court's registry. Mary Adams & Associates claimed $6,577.00 in addition to $3,000.00 attorney fees.
If the original contract had expired, as appellant believes, Adams would not be entitled to a commission. In its answer, Lakeview alleged that it had not been able to timely obtain a loan and that, consequently, the contract should be judicially declared null and void.
In deciding that the extension agreement was valid, the trial judge found that Mr. Moe "... was acting as agent for the corporation." Mr. Moe was the corporation president and he acted with authority.
Ms. Adams said that at the very first meeting between herself, Mr. Moe and Mr. Fontenelle, she asked Mr. Fontenelle which partner had authority to sign for the corporation. She was told according to her testimony, "... that Mr. Moe could sign for the corporation." She did not see or hear further from Mr. Fontenelle until the attempted closing on November 15, 1985. The roof, termite, plumbing and electrical inspection form was signed merely "Richard G. Moe" without any corporate reference.
In arguing that Mr. Moe did have corporate authority to sign the extension agreement, appellees cite Boulos v. Morrison, 503 So.2d 1 (La.1987). This and other cited cases deal with mandate, as defined by and in LSA-C.C. art. 2985 as follows:
"A mandate procuration or letter of attorney is an act by which one person gives power to another to transact for him and in his name, one or several affairs."
Although some mandates require express power, such as an agreement to buy or sell (see LSA-C.C. art. 2997), the trial judge found here that Mr. Moe did not need a formal corporate authorization to extend the sales contract. He had the authority, certainly the apparent authority once Ms. Adams' testimony in this regard is accepted over that of Mr. Moe and Mr. Fontenelle, to extend the time for passing the act of sale.
In Boulos, the Supreme Court of Louisiana stated at page 3:
"Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. LSA-C.C. art. 2985. An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. See Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 103, 136 So. 283 (1931). As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La.,1973); Interstate Electric Co., supra. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Broadway, supra; Interstate Electric Co., supra.

*863 "For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. Comfort Heating & Air Conditioning, Inc. v. Brock, 476 So.2d 927 (La.App. 2 Cir., 1985); Byles Welding & Tractor, Inc. v. McDaniel, 441 So.2d 48 (La.App. 3 Cir., 1983); Bamber Contractors, Inc. v. Morrison Engineering & Contracting Company, Inc., 385 So.2d 327 (La.App. 1 Cir., 1980). The burden of proving apparent authority is on the party relying on the mandate. Bamber Contractors, supra.
"A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent's power. Buckley v. Woodlawn Development Corp., 233 La. 662, 98 So.2d 92 (1957); Byles Welding, supra; Bamber Contractors, supra."
Appellant contends that Ms. Adams did not inquire into Mr. Moe's authority to extend the sales agreement. However, there is sufficient testimony in the record for the trial judge to have found that Ms. Adams had reason to believe that Mr. Moe had the authority. He was, after all, the corporation's president and it was he who represented Lakeview in almost all of the negotiations; further, Ms. Adams had been advised by Mr. Fontenelle that Mr. Moe would execute documents for Lakeview. We believe, as no doubt did the trial judge, that Ms. Adams carried the required burden of proof, as spelled out in Boulos, and earned a commission to be paid by Lakeview.
While Mr. Fontenelle testified that, in his opinion, Mr. Moe did not have authorization to extend the sales contract, he (Fontenelle) admitted that Mr. Moe, on behalf of Lakeview and with his (Fontenelle's) knowledge, was applying to several lending institutions in hopes of obtaining financing.

THE CONCURSUS
LSA-C.C.P. art. 4651 defines a concursus proceeding as:
"... one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding."
In its answer, Lakeview alleged that the August 16, 1985 contract had expired and that the $19,350.00 deposit should be returned.
JHR, in paragraphs 17 and 18 of its answer, said:
"JHR is entitled to the deposit, $19,350.00... under the terms of the agreement...
"JHR is entitled to the award of reasonable attorney fees and costs under the terms of the contract because of Lakeview's default."
The record shows that copies of JHR's pleading were mailed to "opposing counsel." The record does not indicate whether Lakeview's attorney was mailed a copy. It is clear, in any event, that Lakeview was not otherwise served with JHR's answer.
The concursus articles in the Code of Civil Procedure give the district judge the right to grant injunctive relief, the right to award costs of the proceeding, etc., but the court is not given the express authority to render a money judgment in excess of the amount deposited. The jurisdiction of the court appears limited. See Landry & Passman Rlty., Inc. v. Beadle, S., W. & A., Inc., 303 So.2d 761 (La.App. 1st Cir.1974), where the court said at page 763:
"The interpleaded parties must then establish their respective claims to the fund, following which the claimants are paid in order of priority until the fund is exhausted."
The district court had clear jurisdiction over $19,350.00 and awarded this sum to JHR because of Lakeview's default. The award for attorney fees, however, surpassed *864 the deposited amount and was therefore unwarranted. JHR did not have any pleading appropriately served on Lakeview which may have had the effect of enlarging the court's monetary jurisdiction.
JHR nonetheless argues that procedural laws are now liberally construed to allow consideration of any cause of action even if not properly labeled or prayed for so long as the pleadings, taken as a whole, contain sufficient factual allegations to afford fair notice to adverse parties of the relief sought. We are unaware of any authority to support this procedural concept in a pure concursus proceeding, i.e., one in which no cross claims or reconventional demands were lawfully served.
For these reasons, we affirm the appealed-from district court judgment with these amendments:
(1) the amount in the registry of the court, plus any and all accrued interest, belongs to JHR Venture and
(2) the attorney fees awarded to JHR are set aside.
Lakeview is to bear costs of this appeal.
AMENDED AND AFFIRMED.
BOWES, Judge, dissenting.
Being of the opinion that the decision of the district court should be reversed in its entirety.