CHARLES R. JONES, Chief Judge.
I,The Appellant, Ms. Geraldine Billups, appeals an adverse judgment granting the motion for summary judgment of the Ap-pellee, Wells Fargo Bank, N.A. After a review of the law in this matter, we affirm the judgment of the district court.
On August 29, 2008, Ms. Billups purchased a home at the municipal address of 1476-78 N. Miro St. in New Orleans (hereinafter “the property”) with funds loaned by Appellee/defendant Wells Fargo Bank, N.A. (hereinafter “Wells Fargo”) under a HUD-administered 203(k) rehabilitation loan pursuant to Section 203(k) of the National Housing Act, 12 U.S.C. § 1709(k), and the regulations promulgated thereunder. The Section 203(k) program was designed to allow the borrower to get just one mortgage loan, at a long-term fixed rate, to finance both the acquisition and the rehabilitation of the property. As to the instant matter, a list of HUD [1] approved 203(k) consultants was to be provided to Ms. Billups for her selection by Wells Fargo.
On or before the closing of the loan with the bank, Wells Fargo informed Ms. Bill-ups that Andrew Polmer, owner/employee of Louisiana Real Estate |^Inspection Incorporated (“LREI, Inc.”), would be her 203(k) consultant. Mr. Polmer was responsible for making “draw inspections”[2] for Ms. Billups throughout the rehabilitation and renovation of the property.
Furthermore, as part of the loan application, Ms. Billups entered into a contract for the renovation of the property on June 26, 2008, with Espy L. Cornin, who is both the president and representative of the defendant B.C. Enterprise Group, Inc. (hereinafter “B.C. Enterprise”) The subject contract provided for a completion of the renovations within 120 days of commencement. B.C. Enterprise started work on the property on or about January 2009.
In June 2009, Andrew Polmer wrote an inspection report for the sixth (6th) draw based upon an inspection dated June 17, 2009, which suggested that an escrow disbursement of $14,512.50 be made to Ms. Billups. The report indicated that only 54% of the total job had been completed. Furthermore, between June and October 2009, B.C. Enterprise failed to complete any additional work on the property. During this time, Ms. Billups claimed that she was disabled by a medical condition, despite her repeated requests that the work proceed. Subsequently, on or about November 2009, Ms. Billups’ son inspected the property and discovered that the rehabilitation and renovation work still had not been completed by B.C. Enterprise. Therefore, in November 2009, |SB.C. Enterprise was formally discharged[3] for nonperformance of its obligations.
*579 On December 14, 2009, Harvey Williams with Louisiana Statewide Renovator, L.L.C., completed an inspection report that found numerous deficiencies in the work performed by B.C. Enterprise. The deficiencies included improperly installed electrical wiring, plumbing, gas lines, drywall, heating system and roof. The estimated value of the work actually completed by B.C. Enterprise was $15,000, rather than the $85,752.63 actually paid.[4]
After Ms. Billups filed her Petition for Damages on June 17, 2010, Wells Fargo answered and filed a motion for summary judgment, praying for dismissal of all claims asserted by Ms. Billups. At the hearing on the motion in December 2011, counsel for Ms. Billups argued that Wells Fargo was liable for gross negligence because it validated the contractor (Mr. Cor-nin) who failed to complete the work and the consultant (Mr. Polmer) who ultimately confirmed the work. The district court disagreed with Ms. Billups and granted Wells Fargo’s motion for summary judgment. This timely appeal followed.
In her sole assignment of error, Ms. Billups argues that the district court erred in granting Wells Fargo’s motion for summary judgment as genuine issues of material fact are present in this case.
|4The Supreme Court, in Oubre v. Louisiana Citizens Fair Plan, 11-0097, pp. 20-21 (La.12/16/11), 79 So.3d 987, 1002-03, reh’g denied (1/20/12), cert. denied, 11-1252, summarized the summary judgement procedure as follows:
... a motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth, 10-0343, p. 5 (La.1/19/11), 57 So.3d 1002, 1005; Sam-aha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83; Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546, see La.Code Civ. Proc. art. 966. An issue is genuine “if reasonable persons could disagree.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751 (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 481 (1983)). A fact is “material” when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Id.; Penalber v. Blount, 550 So.2d 577, 583 (La.1989). Any doubt as to a dispute regarding a genuine issue of material fact must be resolved against granting the motion and in favor of a trial on the merits. Sassone v. Elder, 626 So.2d 345, 352 (La.1993).
Nevertheless, summary judgments are favored under the law as they are designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. Proc. art. 966(A)(2). Accordingly, rules are liberally construed to accomplish these ends, and a motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. Proc. art. 966(B).
Initially, the burden of producing evidence at the hearing on the motion for summary judgment is placed on the mover who cán ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an *580 essential element in the opponent’s ease. La.Code Civ. Proe. art. 966(C)(2); Schultz, 10-0343 at p. 6, 57 So.3d at 1006; Samaha, 07-1726 at p. 4, 977 So.2d at 883. “At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial.” Samaha, 07-1726 at p. 4, 977 So.2d at 883 (quoting Wright v. Louisiana Power & Light, 06-1181, p. 16 (La.3/9/07), 951 So.2d 1058, 1069-70). Thus, “[o]nce the motion for summary judgment has been properly supported by the moving party, the failure of the nonmoving party to produce evidence of a material factual dispute mandates the granting of the motion.” Id.
Although Ms. Billups raises one assignment of error on appeal, the argument she presents is two pronged. First, she argues that summary judgment was inappropriate because genuine issues of material fact exist as to whether Wells Fargo is liable under a gross negligence theory for the negligent inspection of her home; and, second, she argues that genuine issues of material fact exist as to whether Wells Fargo is liable under the theory of apparent authority.
I.
As to her first argument, Ms. Billups argues that there was gross negligence associated with Wells Fargo’s contractor validation because the contractor’s license of Mr. Cornin was facially invalid. Ms. Billups argues that although she signed a waiver relieving Wells Fargo of liability associated with the contractor approval process, the waiver is invalid if Wells Fargo’s conduct amounts to gross fault.
Ms. Billups argues that the document containing the waiver included those documents Wells Fargo required, including the “copy of current contractor/ builder license.” The contract being validated was for $90,000, while the license specified that the contractor could only perform contracts less than $75,000. Thus, Ms. | (¡Billups maintains that said contract is invalid on its face. She further notes that Wells Fargo admitted to what Ms. Billups characterized as “intentional ignorance” of the invalid contract during the deposition of Rochelle Pietsch of Wells Fargo:
Q: So the contract value could go up, and it wouldn’t get back to your department?
A. Not necessarily.
Q: Are you aware that the HOCA[5] did go up in this case?
A: I am based on the documents provided, yes.
Based on the above colloquy, Ms. Billups concludes that the district court erred in granting the Wells Fargo’s motion for summary judgment because the question of whether the evidence presented amounts to gross negligence is a question for the trier of fact, precluding summary judgment.
Wells Fargo submits that Ms. Billups’ arguments are not on point for the issues presented in the instant matter. Wells Fargo argues that in order to defeat the motion for summary judgment, it was only required to point out to the district court that there was an absence of factual support for one or more elements essential to Ms. Billups’ case. At that time, Ms. Bill-ups only had to come forward with affirmative evidence sufficient to satisfy her evidentiary burden of proof at trial.[6] *581 Thus, Ms. Billups, per Wells Fargo, did not satisfy her evidentiary burden to defeat the motion for summary judgment as to her claims for gross negligence. Further, Wells Fargo argues that Ms. Billups at all times was well aware of the loan [ documents she executed, and that she cannot now claim that the same documents are now invalid.
Under Louisiana law, gross fault is defined as “that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud.” Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d 1278, 1281 (La.App. 8 Cir.1991), writ denied, 595 So.2d 662 (La.1992). Furthermore, this Court discussed the definition of “gross negligence” as follows:
Gross negligence has a well-defined legal meaning, which is distinctly different from the definition of ordinary negligence. In Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110, and 93-3112 (La.7/5/94), 639 So.2d 216, 219-220, citing State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942), the Louisiana Supreme Court stated that “Louisiana courts have frequently addressed the concept of gross negligence” and that “[g]ross negligence has been defined as the ‘want of even slight care and diligence’ and the ‘want of that diligence which even careless men are accustomed to exercise.’ ”
Brown v. Lee, 05-1302, p. 5 (La.App. 4 Cir. 4/5/06), 929 So.2d 775, 778, citing Pierre v. Zulu Social Aid & Pleasure Club, Inc., 04-0752, pp. 5-6 (La.App. 4 Cir. 9/29/04), 885 So.2d 1261, 1264.
One issue presented in the instant matter concerns whether Ms. Billups, as the debtor who has freely executed a chattel mortgage, may subsequently—absent allegations of fraud—assert a defense that the waiver was invalid at the time of execution when it was voluntarily and knowingly made. Under Louisiana law, a waiver is defined as “[a] voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which |Rexcept for such waiver the party would have enjoyed.” Aetna Fin. Co. v. Antoine, 343 So.2d 1195, 1197 (La.App. 4 Cir.1977), citing Breaux v. Laird, 230 La. 221, 234, 88 So.2d 33, 38 (1956). See also Pittman Construction Company v. Housing Authority of New Orleans, 248 La. 471, 179 So.2d 900, 904; Michel v. Efferson, 223 La. 136, 65 So.2d 115, 119 (1952).
A review of the record in this matter indicates that Ms. Billups executed several documents which clearly identified her obligations and responsibilities in accordance with the federal statutes and regulations governing the 203(k) Rehabilitation Loan Program. In these agreements and acknowledgements, she expressly contracted to the following:[7]
(1) “It is [my] responsibility to select the contractor, and to check the work and references of the contractor [I] select.”
(2) “I understand that I am responsible to negotiate any and all agreements with the contractor(s) I select.... ”
(3) “I understand ... the proceeds designated for the rehabilitation or improvement (including a contingency reserve ...) are to be placed in an interest bearing escrow account.”
(4) “The Lender shall release the es-crowed funds ... to the Borrower *582 and/or the Contractor or other appropriate payee who performed the work and supplied the materials ... at such time as the stages of work are completed.”
(5) “I can only request monies for the actual cost of rehabilitation.”
[ 9(6) “Borrower agrees to conform to, and to cause improvements to be constructed in accordance with all requirements of [HUD].”
(7) “The Borrower will cause all improvements to be made in a workmanlike manner and in accordance with all applicable statutes and regulations.”
Based on the aforementioned definition of gross fault, Ms. Billups has not demonstrated that she met her evidentiary burden. Rather, she merely makes allegations that Wells Fargo was responsible for circumstances which gave rise to her failure to oversee the management of the property rehabilitation. Additionally, she asks this Court to completely overlook the waiver she freely executed.
The record is devoid of proof of any contradictory acts on the part of Ms. Bill-ups that would lend support to her argument that Wells Fargo coerced her to sign the mortgage documents, or that the waiver was obtained through fraud or ill practices. Clearly, there is nothing in the record to indicate that Wells Fargo acted with “want of even slight care and diligence” or “the want of that diligence which even careless men are accustomed to exercise.” Rather, the record does indicate that Ms. Billups signed documents which required certain duties and responsibilities of her.
Furthermore, Ms. Billups claims that, “the waiver is invalid if Wells Fargo’s conduct amounts to gross fault.” However, we conclude that Ms. Billups’ argument is merely supposition. This Court does not provide advisory opinions, as we are a Court of record and are obliged to review the documented proceedings in the district court for errors of law. Thus, if the record is devoid of any evidence which would establish negligence, we cannot arrive at a conclusion different from | Tnthat of the district court which sustained Wells Fargo’s motion summary judgment. Thus, this portion of Ms. Billups’ assignment of error is without merit.
II.
In her second argument, Ms. Billups argues that there is a genuine issue of material fact as to whether Wells Fargo is liable under the theory of apparent authority. She argues that Wells Fargo “admitted” that it validated the contractor to perform work on her home. She also contends that LREI, Inc. admitted that Wells Fargo chose it as a 203(k) HUD consultant for the property, and she claims that she reasonably relied on Mr. Polmer’s inspection and certification because he was a professional renovation consultant who was selected by Wells Fargo. She maintains that due to her layperson status and lack of construction knowledge, she had no choice other than to rely on Mr. Polmer’s inspections of the property. She further argues that she relied on Mr. Polmer to assure her that the contractor — B.C. Enterprise — actually completed the work on her home. She also contends that she relied on Mr. Polmer in executing her own certifications that the renovation on the subject property was moving along properly. She argues that she was reasonable in assuming that Wells Fargo’s choosing of the inspector for her meant that the inspector was its agent. Moreover, the inspector signed certifications for the work that were used to make draw requests from Wells Fargo. Ms. Billups contends that even if Mr. Polmer was not an agent of Wells Fargo, she reasonably relied on *583 his representations to her detriment creating a “question of fact” for the district court and thereby precluding summary judgment.
| n Wells Fargo argues that Ms. Billups failed to adduce facts sufficient to substantiate an implied agency relationship between Wells Fargo and Mr. Polmer. In the alternative, Wells Fargo argues that even if Ms. Billups could demonstrate an applicable legal duty of care, she failed to meet her burden in opposing the motion for summary judgment to demonstrate a prima fade case as to breach, damage, and causation, all of which are essential elements of her claims.
In addition, Wells Fargo argues that Ms. Billups has not produced any information sufficient to establish any defective work or inspections. Particularly, Wells Fargo argues that Ms. Billups has not demonstrated: (1) that Wells Fargo, as Ms. Billups’ lender, owed her a duty of care in connection with her selection and engagement of her rehabilitation contractor and/or in connection with the work ultimately rendered by that contractor; or (2) that any duty of care was owed to Ms. Billups by Mr. Polmer, by Wells Fargo, or by anyone else in connection with the draw inspections performed by the HUD inspector as a mandatory precondition to Wells Fargo’s release of escrow draws to Ms. Billups.
Wells Fargo argues that Ms. Billups merely glosses over her prior sworn declarations in which she attested under penalty of perjury that all the work performed by B.C. Enterprise was fully performed in a proper and workmanlike manner. Wells Fargo further argues that the rights, duties and obligations between itself and Ms. Billups are established and defined by the signed written agreements governing Ms. Billups’ loan, which operates as the law between them. Thus, Wells Fargo contends that there is no general duty of care imposed upon it, as | ^mortgagee, in dealing with Ms. Billups in her capacity as the mortgagor. Wells Fargo argues that it assumed no contractual duties and therefore, without any express or explicit contractual provision establishing a duty, none can be inferred as having existed between the parties.
Rather, Wells Fargo concludes that Ms. Billups owed it a duty to ensure the quality of the work completed by the contractor that she selected and she also had a duty to select and retain a properly qualified contractor to complete the work. Wells Fargo also maintains that if B.C. Enterprise and/or its owner, Mr. Cornin, did unqualified and/or rendered shoddy or incomplete work, Ms. Billups breached her duty to Wells Fargo, not the other way around. Wells Fargo argues that it relied upon the sworn certifications by Ms. Bill-ups, her contractor, and the HUD inspector. These certifications were all given to Wells Fargo and HUD for their benefit and protection in agreeing to release more than $72,500 in escrowed loan proceeds to Ms. Billups based upon the six draw requests she submitted to Wells Fargo. Thus, Wells Fargo concludes that summary judgment was appropriate.
La. C.C. Art. 2989 defines mandate as “a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal.” In Boulos v. Morrison, 503 So.2d 1, 3 (La.1987), the Louisiana Supreme Court discussed the doctrine of apparent authority as follows:
Mandate is an act by which one person, a principal, gives power to another, an agent, to transact for him and in his name one or several affairs. La. C.C. art. 2985. An agent’s power or authority is composed of his | ^actual authority, express or implied, together with the *584 apparent authority which the principal has vested in him by his conduct. See Interstate Electric Co. v. Frank Adam Electric Co., 173 La. 108, 136 So. 283 (1931). As between principal and agent the limit of the agent’s authority to bind the principal is governed by the agent’s actual authority. As between the principal and third persons, the limit of an agent’s authority to bind the principal is governed by his apparent authority. Broadway v. All-Star Insurance Corp., 285 So.2d 536 (La., 1973); Interstate Electric Co., supra. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent. Broadway, supra; Interstate Electric Co., supra.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent’s authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent’s actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. Comfort Heating & Air Conditioning, Inc. v. Brock, 476 So.2d 927 (La.App. 2 Cir., 1985); Byles Welding & Tractor, Inc. v. McDaniel, 441 So.2d 48 (La.App. 3 Cir., 1983); Bamber Contractors, Inc. v. Momson Engineering & Contracting Company, Inc., 385 So.2d 327 (La.App. 1 Cir., 1980). The burden of proving apparent authority is on the party relying on the mandate. Bamber Contractors, supra.
A third party seeking to benefit from the doctrine of apparent authority may not blindly rely upon the assertions of an agent. He has a duty to inquire into the nature and extent of the agent’s power. Buckley v. Woodlawn Development Corp., 233 La. 662, 98 So.2d 92 (1957); Byles Welding, supra; Bamber Contractors, supra.
Boulos v. Morrison, 503 So.2d at 3.
Although Ms. Billups argues that there was an agency relationship, there is no support for her argument given that under Louisiana law, particularly La.Rev. Stat. § 6:1124, a mortgage lender (in the instant matter, Wells Fargo) assumes no [^fiduciary responsibilities to its borrower unless expressly assumed by the lender in writing within in a written agreement signed by it and its borrower. Our review of this matter indicates that Wells Fargo did not contract in writing or otherwise to act as Ms. Billups’ fiduciary with respect to the selection of her contractor or the work performed by that contractor. Ms. Billups has not produced any evidence to the contrary. Furthermore, while Ms. Billups implies that such an agency relationship existed, she has not offered any proof which would show that she had absolutely no knowledge that her contractor failed to complete the renovations to the property. Furthermore, Ms. Billups had “a duty to inquire into the nature and extent of the agent’s (Mr. Polmer’s) power.” To prevail on such an argument, Ms. Billups would have to show that she made reasonable inquiries of Mr. Polmer to explain why his draw requests did not correspond with the actual work that was completed, but she did not.
Considering the express duties imposed upon her by the various documents she executed, including but not limited to: (1) selecting of the contractor and checking his work; (2) requesting monies for only the actual cost of the rehabilitation; (3) agreeing to cause improvements to be constructed in accordance with all requirements of HUD; and (4) overseeing that all *585 improvements be made in a workmanlike manner and in accordance with all applicable statutes and regulations, there was clearly a breach in her responsibilities as the borrower. Given Ms. Billups’ express consent to the mortgage agreement, and considering the documents she executed evidencing her consent to the terms of said mortgage 1 ^agreement, an agency relationship cannot be imputed to Wells Fargo for the duties for which she was personally obligated to perform. Instead, the record clearly reflects the draw requests were repeatedly submitted and the funds were received by Ms. Billups. The draw requests were signed by Ms. Billups, thereby confirming her sworn declaration that the rehabilitation of the property was acceptable and payment was justified. Thus, this portion of Ms. Billups’ assignment of error has no merit.

DECREE

For the foregoing reasons, the judgment of the district court granting the motion for summary of Wells Fargo, N.A., is affirmed.
AFFIRMED

. U.S. Department of Housing and Urban Development.

. A "draw inspection” is an inspection completed and submitted to a bank in order to release funds for disbursement during a home rehabilitation or construction. The draw inspection verifies that certain phases of a home renovation/construction project have been completed and that materials required for renovation/construction are purchased on a specific schedule to keep the project moving. A draw inspection confirms that construction benchmarks have been completed or, in the alternative, reports what has not been completed in a given time.

.Ms. Billups testified that she terminated Mr. Cornin around November or December 2009; however, there is no document of record evidencing the termination.

. Allegedly $72,519.30 was disbursed by Wells Fargo and paid by Ms. Billups as well as an additional $13,233.33 paid from Ms. Billups’ own funds for supplies and labor.

. Homeowner/Contractor Agreement.

. See La. C.C.P. art. 966(C)(2).

. The list of acknowledgements, statements and agreements, etc., are found in the record and are derived from various sources, including deposition testimony, executed loan documents, HUD Rehabilitation Loan Agreement, Borrower Acknowledgement forms, and affidavits introduced into evidence.