715 So.2d 722 (1998)
Rodney OLIVER, et al., Plaintiffs-Appellees,
v.
Guy D. STE. MARIE, et al., Defendants-Appellants.
No. 97-1469.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1998.
Jack Derrick Miller, Crowley, for Rodney Oliver et al.
Stephen A. Stefanski, Crowley, Kraig Thomas Strenge, Lafayette, for Guy D. Ste. Marie et al.
Frederick Douglas Gatz, Jr., Lafayette, for Illinois National Insurance Co.
Before THIBODEAUX, COOKS and AMY, JJ.
THIBODEAUX, Judge.
Guy Ste. Marie, his wife, Sharyll, and their automobile insurer, Illinois National Insurance Company, were sued for damages arising out of a three-car accident involving their minor daughter, Renee Ste. Marie. They were sued by the owners and passengers of the other two vehicles involved in the accident. Illinois National denied coverage because the policy contained a "Named Driver Exclusion Agreement," which excluded the minor, Renee, from coverage. The Ste. Maries filed a cross-claim against Illinois National demanding it provide liability coverage according to the terms of the policy, that it *723 indemnify them for their damages incurred from the accident, and that it provide for their defense against the pending action. The trial court found that Renee was 100% negligent and held that the policy exclusion required a signature by the named insured, Guy Ste. Marie. Consequently, the court found the exclusion invalid because Sharyll Ste. Marie signed her husband's name to the exclusion agreement without having authority to do so. Illinois National appealed the trial court judgment and the Ste. Maries filed an appeal seeking review of the trial court's apportionment of 100% fault against Renee Ste. Marie.
We find that the trial court was correct in finding that the exclusion agreement could only be entered into by the named insured, Guy Ste. Marie. Further, because Sharyll Ste. Marie did not have authority to sign on behalf of Guy Ste. Marie, the exclusion is invalid, and Renee Ste. Marie is covered under the terms of the policy. In addition, we find that the trial court did not err in apportioning 100% fault to Renee Ste. Marie in causing the accident because she did not have the right of way at the intersection, and there is no proof that the driver of the vehicle that collided with hers had the opportunity to react to avoid the accident.
The judgment of the trial court is affirmed.

I.

ISSUES
We must determine:
1. whether the named insured is the only person allowed to exclude persons from coverage pursuant to La.R.S. 32:900(L);
2. whether Sharyll Ste. Marie had authority to sign her husband's name to the "Named Driver Exclusion Agreement;" and,
3. whether Renee Ste. Marie was 100% at fault in causing the accident.

II.

FACTS
Renee Ste. Marie was driving her parents' pickup truck on April 22, 1995, when she became involved in a three-car collision at the intersection of U.S. Hwy. 90 and La. Hwy. 91 in rural Midland, Louisiana. Renee was traveling south on two-lane Hwy. 91 before stopping at the intersection of the two highways. Mary and Theresa Broussard were stopped directly across from her, facing north on Hwy. 91. Mary was driving a 1986 Toyota Corolla owned by Terry Lemaire. The Oliver family, consisting of Carlotta (the driver), her husband, Rodney, and their two minor children, was traveling east on Hwy. 90 in their 1985 Buick LeSabre when the accident occurred. The Olivers contend that they saw the truck resting at the stop sign, but as they came upon the intersection, Renee pulled out in front of them in an attempt to cross the highway. Mrs. Oliver stated that she attempted to go around the truck but was not able to because she saw another vehicle in the oncoming traffic. Consequently, she could not avoid colliding with the right, rear passenger side panel of the truck. The impact of the collision caused the truck to spin and hit the front end of the vehicle occupied by the Broussards, which was still at rest at the stop sign.
Renee testified that while she waited at the stop sign, she looked both ways and saw only one car traveling east on Hwy. 90. She waved to the people in the car and then proceeded across the highway. She testified at trial that she never saw the Oliver vehicle coming. Renee was ticketed for not yielding the right of way, and her parents and their insurer were sued by the Olivers, Lemaire, and the Broussards for general, medical and property damages sustained in the accident, contending that the accident was caused by Renee's negligence.
Mrs. Ste. Marie testified that she procured automobile liability insurance for the truck involved in the accident from an insurance agent, Larry Guidry, at the Estherwood Insurance Agency on May 13, 1994. On the first page of the policy application, Mrs. Ste. Marie signed her name beside "Signature of Applicant" and signed "Guy D." above her first name. On the second page of the policy application on the line above the request for "Applicant's signature," she signed her husband's name, and did the same on a separate *724 form for the rejection of uninsured motorists coverage. She also signed her husband's name on the "Named Driver Exclusion Agreement" directly above the request for "Named Insured's Signed Acceptance." The agreement named Renee and her sister, Chanda, as persons excluded from coverage. The listed reason for their exclusion was that they were not licensed at the time. Mrs. Ste. Marie testified that she signed her husband's name on these forms because she was told by the insurance agent to do so.
Illinois National denied coverage for the accident based upon the exclusion agreement. It answered the Petition for Damages filed by the plaintiffs, denying all liability with respect to the accident involving Renee. The Ste. Maries also filed an answer to the petition, alleging that the accident occurred solely and proximately from the negligence of Carlotta Oliver and Mary Ann Broussard. They also filed a cross-claim against Illinois National requesting coverage and that it provide a defense for the Ste. Maries in the pending suit. They asserted that the exclusion agreement was invalid because it was not executed by Guy Ste. Marie and, therefore, coverage applied to Renee Ste. Marie.
The trial court held that the sole cause of the accident was Renee's failure to yield the right of way and failure to keep a proper lookout. The court found that there was nothing to obstruct Renee's view of Hwy. 90 and that had she been keeping a proper lookout, she would have seen the Oliver vehicle approaching the intersection. Further, the court stated that the evidence did not support the contention that Mrs. Oliver could have avoided the accident had she immediately applied her brakes. The court noted that Theresa Broussard testified that the Oliver vehicle was so close to the intersection when Renee pulled out that the accident could not be avoided. Moreover, the court concluded that Renee's failure to yield the right of way caused a "sudden emergency." Under the sudden emergency doctrine, the trial court reasoned that "one who is suddenly confronted with an unanticipated hazard without sufficient time to weigh and consider all of the options and available courses of action, is not guilty of negligence if he fails to adopt what subsequently may appear to have been a better method of avoiding the danger."
In regards to insurance coverage, the trial court held that the Illinois National insurance policy provided coverage because the "Named Driver Exclusion Agreement" had been signed by Mrs. Ste. Marie on behalf of her husband, without there having been an agency relationship in existence at the time. The court followed Safeway v. Johnson, 28,150 (La.App. 2 Cir. 1/24/96); 666 So.2d 1300, which held that pursuant to La.R.S. 32:900(L), only a named insured may exclude a resident of the named insured's household from automobile liability coverage. Guy Ste. Marie is the only named insured listed on the policy application. The court, thereafter, awarded $3,653.80 to Rodney and Carlotta Oliver for property damage sustained to their vehicle; $4,586.62 to Terry Lemaire for the cost of repairs to his Toyota; $8,000.00 in general damages and $125.00 in medical expenses to Mary Broussard; and, $9,000,00 in general damages and $911.00 in medical expenses to Theresa Broussard. The Ste. Maries were awarded $2,300.00 in property damages and $2,705.85 in attorney fees for the defense of the lawsuit. All court costs were assessed to Illinois National as well.
Illinois National and the Ste. Maries appealed. Illinois National argues that the trial court erroneously concluded that the policy provided coverage for the accident on the basis that Mrs. Ste. Marie did not have authority to sign her husband's name to the exclusion agreement. In addition, it contends that it was error to give force to the policy when it was also signed by Mrs. Ste. Marie, in her husband's name. It argues that if the court's rationale is taken to its logical conclusion, the policy should be void in its entirety. In their single assignment of error, the Ste. Maries argue that the trial court erred in attributing 100% fault to Renee Ste. Marie.

III.

LAW AND DISCUSSION

Named Insured Exclusion Agreement
In order to address Illinois National's first contention, we must determine whether *725 the trial court correctly held that only a named insured on a policy of automobile liability insurance could exclude members of a household from coverage. Louisiana Revised Statute 32:900(L) states:
Notwithstanding the provisions of Paragraph B(2) of this Section, an insurer and an insured may by written agreement exclude from coverage any named person who is a resident of the same household as the named insured.
Illinois National argues that the statute allows any insured named in the policy to exclude coverage; therefore, Mrs. Ste. Marie should have had authority to execute the exclusion agreement on her own behalf or as agent for her husband. We, however, agree with the trial court and its reliance on the interpretation of this statute as stated in Safeway, 666 So.2d at 1301, 1302:
Requiring the written consent of each insured, would necessitate the signatures of at least every household member, even those not yet licensed to drive. Neither would the result be any more tenable if the statute were construed to allow any of these insureds to accomplish such a limitation. Even so, the named insured, who acts on behalf of all other insureds in procuring an insurance policy, should certainly be (and is) allowed to exercise this statutory option. We further conclude that the legislature, contemplating a rational construction of the statute, intended for the named insured alone to have the right and responsibility of excluding members of his household from coverage.
(Emphasis added).
We find this reasoning further buttressed by the fact that the signature line of the "Named Driver Exclusion Agreement" requests "Named Insured's Signed Acceptance." (Emphasis added).
Illinois National also argues that it is of no consequence that Mrs. Ste. Marie signed her husband's name to the exclusion agreement. It contends that she had the actual or apparent authority to do so and, therefore, the exclusion agreement is valid. "Mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal." La.Civ.Code art. 2989. The Louisiana Supreme Court stated the following regarding the authority needed to act as an agent/mandatary, and that which is needed to rely on that authority:
An agent's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. As between principal and agent the limit of the agent's authority to bind the principal is governed by the agent's actual authority. As between the principal and third persons, the limit of an agent's authority to bind the principal is governed by his apparent authority. Apparent authority is a judicially created concept of estoppel which operates in favor of a third party seeking to bind a principal for the unauthorized act of an apparent agent.
For the doctrine of apparent authority to apply, the principal must first act to manifest the alleged agent's authority to an innocent third party. Second, the third party must rely reasonably on the manifested authority of the agent. As the Courts of Appeal have correctly held, the principal will be bound for the agent's actions if the principal has given an innocent third party a reasonable belief the agent had authority to act for the principal. The burden of proving apparent authority is on the party relying on the mandate.
Boulos v. Morrison, 503 So.2d 1, 3 (La.1987) (citations omitted).
The trial court stated in regards to the authority issue:
There are no provisions in the policy that would give his [Guy Ste. Marie] spouse "named insured" status. Thus only Guy Ste. Marie or his agent would have authority to reject coverage.
Under the Safeway rationale, Mrs. Ste. Marie had authority to reject coverage of a household member by signing her husband's named [sic] to the policy only if she was empowered to act as his agent.
. . . .
Sharyll Ste. Marie testified that she did not discuss acquiring insurance coverage *726 or any matters relating to insurance coverage with her husband before signing the application. The insurance agent never asked Mrs. Ste. Marie if she had the authority to procure insurance or to sign the application for Guy Ste. Marie. There was no evidence that she had in the past signed Mr. Ste. Marie's name to an insurance policy. Guy Ste. Marie testified that he never told his wife that she should exclude anyone from coverage nor did he give her permission to sign his name. Mr. Ste. Marie was not sent a copy of the "Named Driver Exclusion Agreement," and was not aware that Mrs. Ste. Marie had signed the exclusion until after the accident. There was no evidence that Mr. Ste Marie gave Mrs. Ste. Marie actual authority to act as his agent or did anything to make the insurance agent believe that Mrs. Ste. Marie had the authority to act as his agent. The insurance agent instructed Mrs. Ste. Marie to sign her husband's name to the application and the exclusion. He evidently assumed without inquiring as to the accuracy of his assumption that Mrs. Ste. Marie had the authority to act for Mr. Ste. Marie. Considering the evidence, the Court finds that Illinois National has failed to prove that Mrs. Ste. Marie had either actual or apparent authority to act as Mr. Ste. Marie's agent. The Court therefore holds that the "Named Driver Exclusion Agreement" is invalid and that Illinois National provides coverage.
We find the trial court's findings to be reasonably supported by the record and not manifestly erroneous. Mr. and Mrs. Ste. Marie testified that no authority was conferred upon Mrs. Ste. Marie to act on her husband's behalf. The only reason Mrs. Ste. Marie signed her husband's name to the application and exclusion agreement was because the insurance agent told her to do so. In fact, it is apparent on the first page of the policy application that she began to sign her own name and then signed her husband's name above her own. Thereafter, his name appears on all of the signature lines. Illinois National failed to prove that Mr. Ste. Marie did anything to lead the insurance agent to believe that his wife had authority to act on his behalf. Therefore, Illinois National cannot rely on the theory of apparent authority to deny coverage in this case.
Further, as the trial court stated, Mr. Ste. Marie was not even aware of the exclusions until after the accident occurred. Louisiana Revised Statute 22:628 mandates:
No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless it is in writing and physically made a part of the policy or other written evidence of insurance, or it is incorporated in the policy or other written evidence of insurance by specific reference to another policy or written evidence of insurance.
. . . .
Any written agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be deemed to be physically made a part of a policy or other written evidence of insurance, within the meaning of this section, whenever such written agreement makes reference to such policy or evidence of insurance and is sent to the holder of such policy or evidence of insurance by United States mail, postage prepaid, at such holder's last known address as shown on such policy or evidence of insurance or is personally delivered to such holder.
Mr. and Mrs. Ste. Marie testified that the exclusion agreement was not attached to the policy of insurance, and that a copy was not mailed to them until they asked for a copy of it, upon learning that Illinois National was denying coverage. Illinois National contends that although the actual exclusion agreement was not attached to the policy, the "Named Drivers Exclusion Acknowledgment Form" was attached to the policy, thereby notifying Mr. Ste. Marie of the exclusions because it referred him to the original application and exclusion agreement to determine persons excluded from coverage. We find this argument to be of no consequence in that we agree with the trial court's finding that no agency relationship existed which gave Mrs. Ste. Marie the authority to exclude her daughters from coverage in the first place and, further, even if there had been an agency relationship, a principal can only ratify *727 that which he knows. Mr. Ste. Marie did not know that Renee was excluded because the exclusion was never forwarded to him and was never made a part of the policy.
Illinois National argues that if the trial court's reasoning is taken to its logical course, then the entire policy should also be invalid. We disagree, as we know of no public policy reason or express prohibition against a person procuring insurance on behalf of household members. Accordingly, the trial court's factual findings and legal conclusions will not be disturbed.

Apportionment of Fault
The Ste. Maries contend that the trial court erred in apportioning 100% of the fault in the accident to Renee Ste. Marie. They argue that according to Carlotta Oliver's own testimony, she did not attempt to stop her vehicle when she saw the Ste. Marie vehicle pulling out in front of her and that when she did attempt to brake, it was too late. Therefore, in their opinion, the court should have assessed to Carlotta Oliver at least 30% of the fault in causing the accident.
The plaintiffs responded, asserting that the trial court did not err in its apportionment of fault. They submit that Renee Ste. Marie clearly violated La.R.S. 32:123(B) which requires an operator of a motor vehicle, who has stopped at an intersection, to yield the right of way to all vehicles which have entered the intersection from another highway or which are approaching so closely as to constitute an immediate hazard.
The trial court specifically stated that it did not find any negligence on the part of Carlotta Oliver. The court took into consideration the evidence and testimony presented and specifically took note of the testimony of Theresa Broussard, who witnessed the accident, and found that Carlotta Oliver could not have avoided the accident in view of the "sudden emergency" created by Renee Ste. Marie. It held that the sole cause of the accident was the negligence of Renee Ste. Marie in failing to yield the right of way and failing to keep a proper lookout. The trial court's finding will stand as it is reasonably supported by the record and is not manifestly erroneous. See Clement v. Frey, 95-1119, (La.1/16/96); 666 So.2d 607.

IV.

CONCLUSION
For the aforementioned reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Illinois National Insurance Company.
AFFIRMED.
AMY, J., concurs in part and dissents in part and assigns reasons.
AMY, Judge, concurring in part, dissenting in part.
I respectfully dissent from that portion of the majority opinion which affirms the lower court's determination that Mrs. Ste. Marie did not have authority to enter into a valid exclusion agreement.
In my view, Mrs. Ste. Marie had the authority to obtain the family's automobile insurance coverage. And, I conclude that, if she had that authority, she also had the authority to contract for the terms and exclusions contained in the policy, including the exclusion which is the central issue in this appeal. Although there was no explicit authority given by her husband, I cannot find, even in view of the equivocal nature of the testimony, that Mrs. Ste. Marie did not have actual authority to obtain her family's automobile insurance as well as the attendant exclusions.
As for apparent authority, I find that this too existed in the factual situation presented here. Mrs. Ste. Marie went to the Estherwood Insurance Agency to obtain coverage for her family. As she was Mr. Ste. Marie's wife, the insurance agent had no reason to suspect that she lacked authority to make the requisite decisions necessary for obtaining the policy, including the ability to waive uninsured motorist coverage and exclude her unlicensed daughters from coverage. Such decisions are typically those authorized between husband and wife. To hold otherwise, absent some indication that the action was in fact prohibited, could have absurd and inequitable results. Accordingly, and especially in view of the fact that I conclude that *728 she had authority to obtain the policy, I find that the trial court was manifestly erroneous in finding no such authority for Mrs. Ste. Marie to enter into the exclusion agreement.
As for the portion of the opinion addressing apportionment of fault, I concur.